Marie Basford ATHA, Appellant,

v.

Dr. Morris POLSKY, Appellee.

No. 13614.

Court of Appeals of Texas,
Austin.

Feb. 15, 1984.

Rehearing Denied March 28, 1984.

Bob Andrews, for appellant.

David C. Duggins, Clark, Thomas, Winters & Shapiro, Austin, for appellee.

Before SHANNON, POWERS and BRADY, JJ.

POWERS, Justice.

Marie Basford Atha appeals from the trial court's summary judgment dismissing her medical malpractice claim against her physician, Morris Polsky. The trial court dismissed her suit on the ground that her cause of action is barred by the statute of limitations set forth in Tex.Ins.Code Ann. art. 5.82 § 4, now repealed.[1] We affirm the judgment.

Atha's attorney (not her attorney on appeal) alleged her malpractice claim in an original petition filed in the trial court on September 25, 1978. In her first amended original petition, upon which judgment was rendered against her, Atha alleged that Polsky commenced to treat her skin ailment (idiopathic leucoderma) on or about September 11, 1975. In the course of his treatment, Polsky prescribed for Atha's use the drug trisoralen, to be taken in conjunction with exposure to ultraviolet light. Atha alleged that she followed the remedy prescribed by Polsky, as a result of which she sustained permanently blotched, mottled, or reddened skin in large areas of her body, including her face. Her first amended original petition contains allegations that Polsky's treatment was negligen⸴ and in breach of express or implied contractual duties.[2]

1. The repealed statute is applicable to causes of action "arising after June 3, 1975, and prior to August 30, 1977." *Delgado v. Burns*, 656 S.W.2d 428 (Tex.1983).

2. Atha's first amended original petition is susceptible of an inference that she intended to

allege causes of action both for tort and for breach of contract. Throughout, she alleges that Polsky assured her that she would suffer no injury from her treatment and that it would be done properly, implying a breach of implied or express contractual duties. In addition, the pe-

The following matters are undisputed:

1. Polsky's prescribed treatment ended in May 1976 when Atha discontinued it voluntarily, never to follow it again. Polsky's actions with respect to the drug trisoralen and ultraviolet light, and Atha's use of them, thus occurred more than two years before suit was filed.

2. The permanently blotched, mottled, or reddened skin condition suffered by Atha was observed by Atha more than two years before suit was filed and has not changed since.

3. Within two years before suit was filed, Atha called Polsky and he treated her for a vaginal infection and hives. Within that time, Polsky also saw Atha, at her request, in reference to the skin ailment for which she originally sought treatment, recommending that she use the drug oxsoralen, which she never used although Polsky gave her a sample bottle of the tablets, and also recommending that she seek a new form of treatment in Houston, which recommendation she never followed. Atha makes no claim based upon these transactions within the limitations period.

■ The statute in question, art. 5.82, § 4, provides as follows:

Notwithstanding any other law, no claim against a person ... covered by a policy of professional liability insurance covering a person licensed to practice medicine, ... whether for breach of express or implied contract or tort, ... may be commenced unless the action is filed *within two years of the breach or the tort complained of or from the date the medical treatment that is the subject of the claim ... is completed ....*

(emphasis added). The purpose of the statute is to abrogate the judicially made "discovery rule" in actions brought against physicians to which the statute applies, of which class Polsky is a member. *Nelson v. Krusen and Baylor University Medical Center*, 27 Tex.Sup.Ct.J. 82 (November 16, 1983). Accordingly, we reject Atha's contentions in the present case insofar as they attack the trial-court judgment on the basis of the "discovery rule." The statute does not, however, abrogate the distinctly different doctrine of fraudulent concealment as an equitable ground for estoppel against a defendant's assertion of a limitations bar. *Id.; Borderlon v. Peck*, 661 S.W.2d 907 (Tex.1983). Atha does not allege in the present case a claim of fraudulent concealment in rebuttal to Polsky's limitation plea.

■ Instead, Atha contends art. 5.82, § 4 permits the filing of a cause of action for tort or breach of contract, based upon acts or omissions occurring more than two years previously, provided the plaintiff has maintained with the defendant a general relationship of patient and physician, extending to a date within two years of the filing of suit. In other words, Atha contends the statute of limitation is *tolled* for so long as the patient-physician relationship exists, even if it exists only in reference to medical matters unassociated with the claim. Atha asserts that such a relationship was maintained in the present case, to

---

tition sets forth numerous acts and omissions by Polsky which are alleged to constitute the proximate cause of Atha's permanently discolored skin. They may be summarized as follows:

a. Polsky was negligent in prescribing a drug that was inherently dangerous, unproven, experimental, and dangerously improper, and in prescribing excessive, improper, and dangerous amounts of exposure to ultraviolet light.

b. Polsky was negligent in failing to monitor and supervise progress of the treatment in a timely and careful manner, so as to prevent permanent injury, in failing to prescribe a safer alternative treatment, particularly in light of Atha's fair complexion; in failing properly to diagnose Atha's skin condition, both her normal and abnormal conditions; in failing to warn Atha of the danger posed by the treatment; and in failing properly to prescribe treatment for her skin ailment.

c. Polsky was negligent in continuing the drug and related treatment despite the development of adverse side effects.

We assume Atha's allegations to be true for the purposes of this opinion. *Their apparent breadth is limited, it should be remembered, by the fact that they address only Atha's use of the drug trisoralen with ultraviolet light,* for it is undisputed that she claims no breach of duty by Polsky unrelated to this method of treatment.

a point within the limitations period, owing to her "occasional office visits and intermittent telephone conversations" with Polsky, some of which occurred in the two years before suit was filed but upon none of which does she base a claim in the present suit.

We point out that Atha's contention is distinctly different and considerably more comprehensive than the doctrine of "continuing duty" as applied in suits brought upon a breach of a duty that is coterminous with a relationship. For example, it has been held that a cause of action for legal malpractice normally accrues when the act or omission occurs and damages are ascertainable; however, while the attorney-client relationship continues, there exists in the attorney a continuous duty to disclose to the client the material facts pertaining to the claim and the statute of limitations is tolled, for so long as the relationship continues, *with respect to the client's suit based upon the attorney's failure to disclose those facts.* *McClung v. Johnson,* 620 S.W.2d 644, 647 (Tex.Civ.App.1981, writ ref'd n.r.e.). Similarly, in *Beech v. United States,* 345 F.2d 872, 874 (5th Cir.1965), it was held that a medical malpractice claim against the United States, under the Federal Tort Claims Act and its two-year limitation period, was governed by the "discovery rule." More important for our discussion, it was also held that the patient's claim that government physicians failed to provide "proper care" was not barred where "[t]he diagnosis and treatment *complained of* continued up until just

prior to the institution of [the suit]." (emphasis added).

In the present case, Atha does not directly or clearly allege any breach of a continuing duty by Polsky nor does she allege that his treatment of her skin ailment consisted in a series of installments completed within two years of the filing of suit. There are, however, some allegations in her first amended original petition which might imply such a duty and breach. This is found first in Atha's allegation that Polsky continuously failed to warn her of the danger posed by the drug trisoralen used with ultraviolet light. She admitted in the cause, however, that her permanent injury was apparent to her more than two years before suit was filed and that it has not changed since. We cannot conclude that Polsky was required, for so long as the general patient-physician relationship continued, to warn Atha of a danger she had already encountered, resulting in an injury sustained to its fullest extent and personally observed by her more than two years before suit was filed. Similarly, Atha alleged that Polsky *continually* assured her that she would suffer no harm from his treatment of her, but the summary-judgment "evidence" shows this allegation to be in reference to the drug trisoralen as used with ultraviolet light. Thus, Atha's contention in this respect must fall within her "discovery rule" contention which we have rejected earlier.

The terms of art. 5.82, § 4 do not reject the doctrine of "continuing duty."[3] The

---

**3.** The legislative purpose in enacting art. 5.82, § 4 was to abolish the "discovery rule" which had developed in the common law to extend the limitations period in certain kinds of malpractice actions. *Nelson v. Krusen and Baylor University Medical Center, supra.* An explanation is required.

The statute of limitations applicable to personal actions generally including negligence, is Tex.Rev.Civ.Stat.Ann., art. 5526 (Supp.1982), where the two-year limitation period commences to run when the plaintiff's cause of action "accrued." The judicial construction placed upon the word "accrued," in the form of the "discovery rule," was to the effect that the limitations period commenced in certain kinds of malpractice actions only after the patient

learned, or in the exercise of reasonable care and diligence should have learned, of the harm occasioned by the physician's act or omission. In the judgment of the Legislature, the resulting extension of the limitations period, beyond the two years nominally provided in art. 5526, had led to increased medical costs generally. *See generally,* Redish, *Legislative Response to the Medical Malpractice Crisis: Constitutional Implications,* 55 Tex.L.Rev. 759 (1977); Witherspoon, *Constitutionality of the Statute Limiting Liability for Medical Malpractice,* 10 Tex.Tech.L.Rev. 419 (1979). In the present appeal, Atha presumes the validity of art. 5.82 and does not attack its constitutionality.

In addition to establishing the date of the physician's tort or breach as the date limitations

statute simply requires filing of suit within two years of *either:* (a) the breach of contract or tort of which the plaintiff complains; or (b) "the date the medical treatment *that is the subject of the claim ... is completed....*" (emphasis added). We conclude, however, that Atha has not alleged a claim within that doctrine and thus we need not consider the matter further. We turn then to the matter to which she devotes the bulk of her brief and argument

on appeal, and that is her contention that the statute of limitations is tolled, that is, the statutory period does not commence, for so long as the patient-physician relationship continues, even though it continues only in reference to matters upon which no claim of malpractice is made.

We do not believe art. 5.82, § 4 may reasonably be interpreted in the manner suggested by Atha. In effect, Atha requests the judicial creation of a disability

commences to run under art. 5.82, § 4, the Legislature also included in the statute the alternative provision discussed in the text of this opinion: the patient's suit against a physician covered by the statute must be commenced within two years "from the date the medical treatment that is the subject of the claim ... is completed...." This alternative provision implies, of course, that if the physician's tort or breach occurred more than two years before suit is filed, the patient's malpractive action may still be maintained if: (a) the tort or breach occurred as part of "the medical treatment that is the subject of the claim"; and (b) that treatment was completed within two years of the date suit was filed.

Under the *former* statutory standard, measuring the limitations period from the date the patient's cause of action "accrued," the several state jurisdictions had developed one or more ways by which a patient could avoid the limitations bar when his action asserted a tort or breach occurring outside the limitations period: (a) judicial creation of the "discovery rule" discussed above; (b) application of the longer limitation period generally allowed for actions based upon contract, when the patient's allegations raised such a claim; (c) recognition of the physician's fraudulent concealment as a ground for estoppel against his plea of the limitations bar; and (d) judicial creation of the common law "termination rule" or "continuous treatment theory," where permitted by the facts of the case. Comment, *An Analysis of State Legislative Responses to the Medical Malpractice Crisis,* 1975 Duke L.J. 1417, 1430–32. Atha contends in the present appeal that the alternative provision in art. 5.82, § 4, relative to the date her treatment was completed, incorporates in statutory form the last-named means of avoiding the limitations bar.

One author has, indeed, suggested as much, stating that the alternative provision in art. 5.82, § 4 may prove an "escape valve which would allow the courts to construe a cause of action as accruing [sic] later than the date of the negligent act or omission." Comment, *Medical Liability and Insurance Improvement Act of Texas: The New Legislative Procedure for Amputation of Patients' Rights,* 30 Baylor L.Rev. 481, 484–85 (1978). The date the patient's cause of action

"accrued" may be an erroneous standard since art. 5.82, § 4 omits that concept. The author nevertheless correctly makes the point that the alternative provision of the statute does, in its wording, accommodate the continuous treatment doctrine. That doctrine, as a common law doctrine "never enjoyed much use in Texas," Perdue, *The Law of Texas Medical Malpractice,* 11 Hous.L.Rev. 825, 834 (1974).

Before we are required to consider whether the alternative provision in art. 5.82, § 4 promulgates, as a statute, the continuous treatment doctrine, we must first determine whether the summary judgment record in Atha's case permits her to invoke the doctrine.

Continuous treatment ... is *not* held to be synonymous with the continuing patient-physician relationship. It embodies the treatment for that *condition* out of which the negligence is alleged to have arisen, *continuing after* the negligent act *rather than the continuation of the general patient-physician relationship.* While the termination of the treatment can be the time of accrual where there is no affirmative act of negligence and the injury results from the course of treatment, the general rule is that the statutory period is not postponed when there is a specific act of negligence even though the physician continues to treat the patient as long as the condition is not aggravated by it. *Of course, if the plaintiff discovers the negligence or injury during the continuing treatment the rationale for the theory ceases to have meaning and the cause of action accrues and the statute commences to run at that point.*

*Id.,* at 834. (emphasis added). The last sentence in the foregoing quotation refers to the "discovery rule" used in a sense different from its former use under art. 5526. Here it is used as an exception to the continuous treatment doctrine, which does not apply "where the patient, prior to termination of the treatment, discovers, or has an opportunity to discover, the act of malpractice and his injury"; and where the exception arises from the facts of the case, "[t]he cases ... hold that even though the treatment has not yet terminated, the limitation period commences to run from the time the patient discovers the pertinent facts." Annot., 80 A.L. R.2d 368, 383 (1961).

similar to those created by *statute* for tolling the period of limitations. *See,* Tex.Rev. Civ.Stat.Ann. arts. 5535 (tolling limitations on personal actions of minors, married persons under age 21, prisoners, and persons of unsound mind), 5537 (tolling limitations on personal actions for periods when a resident defendant is absent from the State), and 5538 (suspending limitations for 12 months or until qualification of an administrator or executor on death of the plaintiff or defendant) (1958 and Supp. 1982).

Moreover, Atha's position is more extreme than that implied in the "discovery rule," *for under the interpretation she would have us give the statute one could know* of his injury and its full consequences and yet permissibly delay in filing his suit for so long as he is willing to conduct "occasional office visits and intermittent telephone conversations" with his physician. Her interpretation would re-attach the "long tail" effect of medical malpractice claims which *Nelson, supra,* declared the Legislature intended to sever by enactment of art. 5.82, § 4. Still further, Atha's interpretation would totally defeat the legislative judgment as to the purposes of the limitation statute (repose and the encouragement of settlements or adjudications while recollections are fresh and documents available) as weighed against the possibility that well-founded claims might be barred in consequence. *See, Robinson v. Weaver,* 550 S.W.2d 18, 20–21 (Tex. 1977).[4] Finally, nothing in the words of the statute suggests that the Legislature intended the interpretation for which Atha contends; indeed, the sense of the statute is to the contrary for its force is directed at the date of the particular tort or breach "complained of" and the date of completion of the particular "medical treatment that is the subject of the claim," both of which imply that the limitation period without exception *commences to run* on the relevant date.

Finally, aside from whether time is tolled under the statute, it has not been suggested to us that any statutory or judicial rule has the effect of *suspending* the time once it begins to run.

For the foregoing reasons, we reject the interpretation of art. 5.82, § 4 advanced by Atha. Accordingly, we affirm the judgment of the trial court.

BRADY, Justice, dissenting.

I respectfully dissent. My reading of the summary judgment affidavits indicates a continuance of the physician's treatment of appellant for the same skin condition. This would raise a fact issue to be determined by a trier of the facts on a trial on the merits.

Further, it appears that the majority's construction of article 5.82, § 4, which provides two possible different dates limitations begins to run, makes the two dates the same:

> "Suit must be filed within two years (1) of the breach or the tort complained of *or* (2) from the date the medical treatment that is the subject of the claim ... is completed...."

Under the majority's interpretation, treatment ended when the use by the patient of the physician's prescription drug was discontinued, which was the tort complained of. This also would be the same date as the date the medical treatment that is the subject of the claim is completed.

---

**4.** 550 S.W.2d at page 20, the Court states:

[t]he primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds.... Statutes of limitations are not directed to the merits of any individual case, they are the result of the legislative assessment of the merits of cases in general. The fact that a meritorious claim might thereby be rendered nonassertible is an unfortunate, occasional by-product of the operation of limitations. All statutes of limitations provide *some* time period during which the cause of action is assertible. However, preclusion of a legal remedy alone is not enough to justify a judicial exception to the statute.

The legislature made the two provisions *disjunctive* and it seems obvious they were not intended to mean the same date. I would hold that the medical treatment that is the subject of the claim in the case at bar is not the prescribing of the drug, and the appellant's discontinuance of its use, but rather the completion of the physician's continuing treatment of appellant for the same skin condition. Appellant would then have two years from this date in which to file suit.

An example may illustrate the problem: A doctor gives a patient a drug which results in harmful side effects and discontinues the treatment with that drug. He then tries to alleviate the side effects and the original malady with another drug for a period of two years, but fails. Under the majority's construction, the date limitations begins to run for both dates set out in the statute would be the day the doctor discontinued treatment with the drug which caused the side effects. That is the last date the doctor acted negligently by prescribing that drug and that is the date on which that particular *type* of treatment was completed. The congruity of dates, it seems to me, would always be the case under the majority's construction.

After reading the summary judgment affidavits, it appears there was a controverted fact issue of whether or not there was continuing treatment within the two-year period prior to suit. This issue should be determined by the trier of fact upon a trial on the merits.

I would reverse the judgment of the trial court sustaining the motion for summary judgment.