**Diane M. MARCHAL, Appellant,**

v.

**John Q.A. WEBB, Jr., M.D., Appellee.**

**No. 01–92–00897–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 13, 1993.

Rehearing Denied Aug. 31, 1993.

Stephen M. Gano, Gano, Donovan & Gano, Inc., Houston, for appellant.

Richard A. Sheehy, Lauren L. Beck, McFall & Sartwelle, Houston, for appellee.

Before DUNN, SAM BASS and PRICE *, JJ.

## OPINION ON MOTION
## FOR REHEARING

DUNN, Justice.

The appellant, Diane M. Marchal has moved for rehearing. We withdraw our opinion of March 18, 1993 and substitute this opinion in its place. We deny the motion for rehearing and affirm the summary judgment granted in favor of John Q.A. Webb, Jr., M.D.

In her motion for rehearing, appellant reasserts the points of error raised in her appeal and further argues this Court erred with respect to our opinion on the issue of fraudulent concealment. In her appeal, the appellant argued the trial court erred because, as a matter of law, the statute had not run, and because the appellee failed to show there was no genuine issue of material fact concerning appellant's allegations of fraudulent concealment and lack of discovery. The appellee replied that the trial court was correct because of the absolute, two-year statute of limitations in actions brought pursuant to 4590i of the Texas Revised Civil Statutes, and because the appellant waived her right to appeal the summary judgment on the grounds of fraudulent concealment and lack of discovery. With respect to the point of error related to fraudulent concealment and lack of discovery, the appellee also argues the appellant knew of her injury and failed to present evidence of a fact issue on fraudulent concealment.

On August 21, 1986, the appellant first saw the appellee for "problems with her eyes and eyesight" and to see if she was a possible candidate for radial keratotomy

---

* The Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

(RK) surgery. During that visit, the appellee evaluated her for possible RK surgery.

The first RK surgery was performed on September 5, 1986, when the appellee made 16 cuts in each of the appellant's eyes. The appellant returned to the appellee on September 10, 1986, December 19, 1986, and March 23, 1987. During this time, the appellant complained of pain and fluctuating vision at various times during the day.

On March 26, 1987, the appellant underwent a second RK surgery to correct the first surgery and to further correct her myopia. The appellant returned to the appellee for examinations on April 3, 1987, April 23, 1987, July 27, 1987, August 1, 1988, November 11, 1988, December 5, 1988, December 6, 1988, April 21, 1989, and September 11, 1989. During this period, the appellant continued to experience pain and fluctuating vision. The appellant indicated that prior to the second surgery in March, she suspected the appellee had done something wrong. The appellant saw another doctor, Dr. Koonce, on April 3, 1989.

On August 24, 1990, the appellant wrote the following letter to the appellee.

Dear Dr. Webb,

This letter is long overdue. For the past three years I have wondered and questioned and wondered more why you destroyed my eyesight. I thought you were a brilliant man; I TRUSTED YOU!! I thought you were among God's best & brightest!! And look what you did to me!!

—Right eye permanently set at 3:00 o'clock instead of straight ahead. It is ALWAYS in *excruciating pain,* tremendous pain so bad I've contemplated suicide several times, but haven't just because I didn't want to do that to my husband.

—Fluctuating vision all the time

—25 to 30 "stabbing pains" in left eye each day, like a strong jolt

—no night vision, cannot see in dimly lit places

—never see right, always feel disoriented & half crazy

—eyes feel like they're separating, coming apart, "caving in" all the time, always hurting

It takes 99% of my effort each day just to deal with my eyes; I can barely function, work, reason or do anything. My business is suffering because of it.

I've been to the Univ. of Houston, Mann Eye Clinic, Houston Eye Surgery, Houston Eye Associates, other eye specialists & now a neurologist to deal with the _____ & the pain, No one can help me; how could you do this to me?!!

I don't even want to get out of bed in the morning; I just want to die. You have *WRECKED* my life; how could you do this to an innocent human being? How YOU HAVE BUTCHERED my eyes & wrecked my life.

Diane M. Marchal

Pursuant to 4590i, the appellant gave notice of her claim on August 16, 1990, and filed suit on May 5, 1991. Her petition alleges negligence and fraudulent misrepresentations to conceal the appellee's wrongdoing, and seeks actual and punitive damages.

The appellee moved for summary judgment on April 8, 1992, arguing the absolute, two-year statute of limitations ran from the date of the second surgery and had expired. The appellee also argued in his motion that the appellant's allegations were groundless inasmuch as the evidence showed the appellant was aware of an injury as early as September and October 1986. The appellee further argued the evidence showed that, at least by April 3, 1989, when she saw Dr. Koonce, the appellant was aware of her injuries.

In response to the allegations of negligence, the appellee attached his affidavit denying each and every claim. The appellant's reply primarily focused on the discrepancies between the appellee's affidavit and other evidence, including his deposition testimony on the issue of negligence. Beyond incorporating her live pleading into her reply, the appellant's reply does not address the issue of fraudulent concealment. The appellant's only response to the limitations defense raised by the appellee is

an argument that what was at issue was a course of treatment.

The appellant's supplemental reply attached the affidavit of Dr. Douglas D. Koch, raising fact issues regarding the appellee's negligence, causation, and damages. The appellee responded by attacking Dr. Koch's affidavit as incompetent summary judgment evidence because of the appellant's failure to timely designate Dr. Koch as an expert. The court granted summary judgment on July 13, 1992.

## Standard of Review

■ Either party may move for summary judgment under rule 166a of the Texas Rules of Civil Procedure. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

■ Once a movant has established a right to a summary judgment, the burden shifts to the nonmovant. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The nonmovant must then respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *Id.*

■ For a defendant as movant to prevail on a summary judgment, he must either (1) disprove at least one element of plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied); *Kirby Exploration Co. v. Mitchell Energy Corp.*, 701 S.W.2d 922, 926 (Tex.

App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ A party moving for summary judgment on the basis of limitations must conclusively establish the bar of limitations. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983); *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex.1975). If the defendant conclusively establishes the defense of limitations and the plaintiff resists the summary judgment by asserting the affirmative defense of fraudulent concealment, the plaintiff must then produce evidence that raises a fact issue with respect to the fraudulent concealment. *Nichols v. Smith*, 507 S.W.2d 518, 521 (Tex.1974).

## Limitations period had not expired

■ The appellant argues in her first point of error that, as a matter of law, the limitations period had not expired, and that, the trial court erred by granting summary judgment on that basis. The foundation of her argument is the purpose for which the appellant initially contacted the appellee, i.e., to correct her vision problems. She continued to see the appellee over a period of time, until September 1989, in an attempt to achieve that goal. For limitations purposes, the controlling question initially, is whether the post-operative visits to the appellee constitute a course of health care treatment.

■ It is well settled that with the passage of the Medical Liability and Insurance Improvement Act,[1] the legislature intended to adopt an absolute two-year limitations period and to abolish the discovery rule for medical malpractice claims. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985); *Neagle v. Nelson*, 685 S.W.2d 11, 12–15 (Tex.1985); *DeLuna v. Rizkallah*, 754 S.W.2d 366, 367–68 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Tsai v. Wells*, 725 S.W.2d 271, 273 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). The statute specifically provides for situations where the date of injury is not readily ascertainable. Article 4590i, section 10.01, in pertinent part provides:

**1.** Tex.Rev.Civ.Stat.Ann. art. 4590i (Vernon Pamph.1993).

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed....

TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Pamph.1993).

In *Kimball v. Brothers*, 741 S.W.2d 370 (Tex.1987), the Texas Supreme Court strictly construed the Act as providing an absolute, two-year period of limitations and clarified when to apply each of the statute's three limitations-triggering events.[2] The *Kimball* court stressed that under the statute, when the facts of the situation establish the precise date of the specific breach or tort, the limitations period runs from the date of that breach or tort. *Id.* at 371. The terms *breach* or *tort* are used to designate the act or omission on which the claim is founded. *See Morrison*, 699 S.W.2d at 208. According to the *Kimball* court, the last date a doctor sees the patient controls the running of the limitations period in situations where "the patient's injury occurs during a course of treatment for a particular condition *and the only readily ascertainable date is the last day of treatment.*" *Kimball*, 741 S.W.2d at 372 (emphasis added). We construe *Kimball* to say that when you can ascertain a date of injury, that is the date the statute begins to run.

In order for the appellant's suit to be timely, an event giving rise to liability must have occurred after February 19, 1989, two years and 75 days prior to when suit was filed on May 5, 1991.[3] The appellee argues the limitations period began to run from the date of either one of the appellant's

surgeries as she is not complaining about negligence in the post-operative care. Under this analysis, the injury occurred on either September 5, 1986, or March 26, 1987. Therefore, the limitations period expired on March 26, 1989, or with proper notice, on June 9, 1989, 75 days later, and the appellant's action is barred. The appellant contends that the post-operative examinations that continued until September 11, 1989, constituted a course of continuing treatment for her vision problems; thus, her lawsuit was timely filed.

The *Kimball* court clarified that the provision in section 10.01 that permits the limitations period to run from "the date the medical or health care treatment that is the subject of the claim ... is completed" is limited to situations where the patient's injury occurs during the course of treatment for a particular condition and the last treatment date is the only readily ascertainable date. *Kimball*, 741 S.W.2d at 372. These situations generally arise in suits alleging misdiagnosis or mistreatment. *Id.*

In this case, the appellant's second amended original petition contains the allegations of negligence on the dates of the two surgeries and misrepresentations by the doctor in an attempt to fraudulently conceal his negligence during the surgeries.

> [B]eginning on or about August 21, 1986 ... plaintiff went to see defendant ... concerning problems with her eyes and eyesight.... During the course of such care and treatment by defendant, Dr. Webb examined her eyes and vision problems.... and recommended that ... she permit him to do and perform this surgical procedure upon her to correct and cure her eyes and vision problems. Plaintiff believed him and relied upon such representations and permitted him

---

**2.** These events are: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *Kimball*, 741 S.W.2d at 372.

**3.** The appellant gave notice of her claim on August 16, 1990, pursuant to TEX.REV.CIV.STAT. ANN. art. 4590i, § 4.01 (Vernon Pamph.1993),

and filed suit on May 5, 1991. Under the provisions of article 4590i section 4.01(c), proper notice "shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice...." *See also Phillips v. Sharpstown Gen. Hosp.*, 664 S.W.2d 162, 164–66 (Tex.App.—Houston [1st Dist.] 1983, no writ).

to perform such surgery upon her.... The aforesaid representations by defendant to plaintiff were untrue and false and were made by defendant in a fraudulent effort to obtain her agreement permitting him to perform such operation upon her....

Defendant performed such first surgery on or about September 5, 1986. In the performance of such surgery upon plaintiff, defendant failed to meet the proper accepted standard of medical care required of him, was negligent, among other things, in cutting each eye sixteen times. Such negligence, and the said fraudulent false representations were, jointly and severally, a direct and proximate cause of damages and injuries to plaintiff. Such surgery, thirty-two cuts for both eyes by defendant, so done produced massive eye and vision problems for plaintiff including pain and excessively fluctuating visual acuity. Defendant had plaintiff return under his continuing care for such problems [massive eye and vision problems], representing to her that she would be alright with passage of time under his continuing care. More specifically, such surgery, and faulty surgery by defendant, caused plaintiff extensive unbearable pain, loss of, and excessively fluctuating, visual acuity, inability to focus her eyes, etc., and loss of vision in subdued light. Defendant proposed ... to her that he redo the surgery to correct the problems resulting from the first surgery ... and still believing him, and in reliance upon him and his said representations, she agreed. Again such representations were false and made to induce her to agree to the second surgery.

Defendant redid the surgery ... but again he failed to meet the proper accepted standard of medical care required of him, was negligent and such negligence, and such fraudulent false representations were a ... direct and proximate cause of plaintiff's damages and injuries. More specifically, since Ms. Marchal had fluctuating visual acuity after the first 16–cut radial keratotomy, the placement of an additional 16 cuts on each of Mr.

[sic] Marchal's eyes by Dr. Webb was excessive and below the proper and correct accepted standards of medical care expected and required of ophthalmologists ... such conduct by Dr. Webb was negligen[t]....

The second surgery done on or about March 26, 1987, resulted in plaintiff being rendered much worse by defendant, intensifying her pain, creating more excessive fluctuating visual acuity and the aforesaid other problems with her eyes and vision.

Defendant then continued to have plaintiff returning to him for treatment following the second surgery, representing to her that his continued medical care of her was necessary and, that she would be alright with time under his continued care. Plaintiff believed and relied upon such representations and in reliance thereon continued under his care and treatment though her eyes and vision were worsening due to his negligence. Such representations by defendant were false and made for the purpose of deceiving her into continuing under his care. She thus continued under defendant's continued care and treatment until September 11, 1989.... *Later she learned that the damage to her eyes and vision by defendant aforesaid was caused by defendant's negligence, and that his continuing treatment and his requests that she return under his continuing care were designed and intended to delay and prevent her from learning the truth about his falsehoods, his negligence, and the cause of plaintiff's problems and damages. This was defendant's effort to conceal his wrongdoing from plaintiff.*

The appellant's recitation of the events surrounding the appellee's subsequent care of her appear to be directed towards the allegations of fraudulent concealment and not allegations of negligence in her continuing care that could cause the limitations period to begin on September 11, 1989, the date she last saw the appellee.

The pleadings clearly allege negligence in connection with the performance of the

surgery on the appellant's eyes. However, as noted above, these dates fall outside the limitations period. Thus, whether the period following the second surgery should be interpreted as being part of a continuing course of treatment must be decided in order to determine whether the appellant's action is barred by the statute of limitations.

The principles articulated by the supreme court in *Kimball*, discussed above, determine that when a date certain is known, that date controls. *Kimball*, 741 S.W.2d at 371. We then must look to the cases construing the term "continuing course of treatment" to see if these facts should be interpreted in such a manner.

■ The court in *Atha v. Polsky* recognized the existence of a doctrine of "continuing duty" in Tex.Ins.Code Ann. art. 5.82, § 4[4], the predecessor to the current statute. 667 S.W.2d 307, 309 n. 3 (Tex. App.—Austin 1984, writ ref'd n.r.e.). Under this doctrine, borrowed from legal malpractice actions, a physician has a continuous duty to disclose to the patient material facts pertaining to the claim, and the limitations period is tolled for as long as the relationship continues, with respect to a suit based upon the failure to disclose those facts. *Id.* at 309. However, finding support in the language of the statute, the *Atha* court held that something more than the mere existence of a physician-patient relationship was required before it would hold a physician to such a duty. *Atha*, 667 S.W.2d at 309–11. The court held that the relevant treatment must be "the subject of the claim." *Id.*

■ The appellant cites *Vinklarek v. Cane*, 691 S.W.2d 108 (Tex.App.—Austin 1985, writ ref'd n.r.e.), to support her contention that the limitations period begins to run at the end of the last treatment for the condition for which the patient initially saw the doctor. Under the facts of that case, the doctor continued to treat the plaintiff "for the results of her infection" acquired during oral surgery. *Id.* at 110. The plaintiff alleged the doctor

made several errors in caring for and treating her, which resulted in exacerbation of the infectious process; that because the infection was not handled property at the outset, hospitalization in excess of three months was required, and that 'during the course of this hospitalization and *thereafter*, [plaintiff] incurred massive bills for physicians' treatment.'

*Id.* (emphasis in original). The opinion further notes that the defendant doctor stipulated that he "continued to treat the Plaintiff for this illness up through the fall of 1984." *Id.* This view is substantiated by the excerpted portions of the plaintiff's medical records in the opinion. *Id.* at 111. Allegations of this nature are not present in the case before us.

In *Jones v. Cross*, 773 S.W.2d 41, 43 (Tex.App.—Houston [1st Dist.] 1989, writ denied), this Court found that the allegations in the plaintiff's petition, supported by his affidavit, that the negligence of the defendant during the course of continuing treatment consisted "among other things" of deep incisions during the RK surgery, raised a fact issue about the date of the alleged tort. Our liberal construction of the pleadings raised an issue of negligence during the appellant's post-operative period. *Id.* We determined summary judgment was not appropriate. *Id.* at 42. We noted in *Jones* that none of the summary judgment evidence offered by the defendant conclusively showed that the plaintiff's allegations related only to the surgical procedure and not also to the post-operative care. *Id.* Unlike *Jones*, the appellant's pleadings use the term "continu-

---

**4.** Act of June 3, 1975, 64th Leg., R.S., ch. 331, 1975 Tex.Gen.Laws 864, 865–66, *repealed by* Act of June 16, 1977, 65th Leg., R.S., ch. 817, 1977 Tex.Gen.Laws 2039, 2064. The statute read, in part,

Notwithstanding any other law, no claim against a person ... covered by a policy of professional liability insurance covering a person licensed to practice medicine ... whether for breach of express or implied contract or tort ... may be commenced unless the action is filed within two years of the breach or the tort complained of or from the date the medical treatment that is the subject of the claim is completed....

ing care," but complain of negligence only in the manner in which the surgery was conducted.

In *Thames v. Dennison*, 821 S.W.2d 380, 384 (Tex.App.—Austin 1991, writ denied), the Austin Court of Appeals held the limitations period of the plaintiff's cause of action began with the date of the surgery that allegedly caused one of the plaintiff's legs to be shorter than the other. The plaintiff attempted to circumvent the limitations bar by alleging that the subsequent visits to the doctor were for follow-up treatments for the surgery performed earlier. *Id.* at 383. The court noted the plaintiff made no allegations that the subsequent care he received contributed to his injuries. *Id.* at 384. Therefore, it declined to find the limitations period beginning on the date the patient last saw the doctor for another ailment. *Id.*

In *Shook v. Herman*, 759 S.W.2d 743, 744 (Tex.App.—Dallas 1988, writ denied), the appellant alleged negligent treatment during her post-operative period as well as during her laser eye surgery. The appellant argued that the appellee's course of treatment ended on June 15, 1985, and the appellee argued that it actually ended on April 26, 1984, the last date he could personally have seen the appellant. *Id.* at 745. The court analyzed the allegations of negligence during the surgery and during the subsequent care independently of one another. *Id.* at 746. It determined that, as to the ascertainable dates,[5] the statute had run. *Id.* The court interpreted TEX.REV. CIV.STAT.ANN. art. 4590i, § 10.01 as requiring the statute to run from the "precise dates of the breach or tort alleged" as the dates of the surgery. *Shook*, 759 S.W.2d at 746. The court used the date of the second surgery as the beginning of the running of the limitations for the period between the two surgeries. *Id.* The court calculated two years and 75 days after each allegedly negligent act to determine the summary judgment for the defendant was appropriate for three of the four allegations of negligence. *Id.* While acknowl-

edging there might have been a fact question on the last date of treatment, the court nevertheless affirmed summary judgment based upon the appellee's uncontroverted affidavit averring no negligence on his part. *Id.*

The plaintiff in *Martin v. Cohen* did not allege negligent acts beyond what occurred during her facial and dental surgery. 804 S.W.2d 201, 204. (Tex.App.—Houston [14th Dist.] 1991, no writ). There were no allegations that any subsequent or continuing treatment by the appellees contributed to her injuries. *Id.* There, the court found the limitations period had expired two years after the appellant's surgery and subsequent infection from that surgery. *Id.*

The Texas Supreme Court recently examined whether taking medication on a prescription that the doctor agreed to refill constitutes a course of treatment, absent any office visits or related diagnostic services. *Rowntree v. Hunsucker*, 833 S.W.2d 103, 104 (Tex.1992). There, the doctor urged the court to establish a rule that the statute must run from the date of the last contact with the doctor. *Id.* at 106. The court noted:

> The answer to questions of whether the patient is receiving a course of treatment, and when the course of treatment ends will depend upon the specific facts of the case. Courts have considered such factors as whether a physician-patient relationship is established with respect to the condition that is the subject of the litigation, whether the physician continues to examine or attend the patient, and whether the condition requires further services from the physician.

*Id.*; *see, e.g., Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133, 138 (N.D.1990); *Couillard v. Charles T. Miller Hosp., Inc.*, 253 Minn. 418, 92 N.W.2d 96, 103 (1958). After analyzing the factors, the supreme court held that a course of treatment is not established when a patient takes medi-

---

**5.** Those dates were the date of the lens implant, August 9, 1982; the follow-up care for this procedure which encompassed the period after Au-

gust 9, 1982, until the date of the next surgery; and the laser surgery on November 30, 1983.

cation significantly beyond the period contemplated by the doctor without further personal contact between the doctor and the patient. *Rowntree*, 833 S.W.2d at 107–108.

It should be noted that in the appellee's affidavit, he does not deny treating the appellant. He indicated that he would have to wait until the post-operative period, some four to five months, to determine whether the surgery removed the appellant's nearsightedness. In his deposition testimony excerpts,[6] cited in plaintiff's response to defendant's motion for summary judgment, the appellee was asked how long the appellant continued to be his patient after the initial visit. He replied, "Her last visit that I have records of seeing her was 9–11–89." His affidavit also refers to several of the appellant's visits as "follow up" and "post-operative." On the other hand, the appellant does not allege negligence in her post-operative care by the appellee; rather, her allegations during this time relate to the fraudulent concealment argument.

In this situation, the injury alleged by the appellant occurred on the date of either of the two surgeries. It would therefore be incorrect to apply the date of the appellant's last visit to the appellee as the trigger point for the statute of limitations. *See Thames*, 821 S.W.2d at 383; *Martin*, 804 S.W.2d at 203–204.

We overrule the appellant's first point of error.

### Lack of Discovery and Fraudulent Concealment

In her second point of error, the appellant argues that if limitations began to run on the date of her second surgery, her suit is still timely because of the doctrines of fraudulent concealment and lack of discovery.

The appellee argues that the appellant waived these arguments by failing to present them in her response to the motion for summary judgment. *See Manges v. Astra Bar, Inc.*, 596 S.W.2d 605, 611 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.). While both of these issues are present in the appellant's pleadings, they are not raised in the appellant's response to the motion for summary judgment. In the appellant's motion for rehearing, she argues that, by including 22 pages of deposition testimony in her response, she raised the fraudulent concealment issue.[7]

 We disagree. We interpret the deposition excerpts as the appellant's evidence in support of the issues specifically raised in her response, i.e. Dr. Webb's negligence during surgery, informed consent, and the characterization of the appellant's claim as a continuing course of treatment. If we adopted the appellant's argument, that via the deposition excerpts, the issue of fraudulent concealment was raised, the trial court would have been forced to analyze 39 pages of deposition excerpts and speculate, from among the issues the appellant could potentially raise, as to which the testimony may apply.[8] Rule 166a re-

6. This deposition testimony was not properly authenticated; however, we note that the appellee *failed to specifically object to the lack of* authentication at either the trial or on appeal. *See Veal v. Veterans Life Ins. Co.*, 767 S.W.2d 892, 895 (Tex.App.—Texarkana 1989, no writ); *see also Bixenstine v. Palacios*, 805 S.W.2d 889, 891 (Tex.App.—Corpus Christi 1991, no writ); *Kotzur v. Kelly*, 791 S.W.2d 254, 257 (Tex.App.— Corpus Christi 1990, no writ).

7. The appellant's pleading reads, in pertinent part, as follows:
 In support of this reply, plaintiff incorporates herein by reference hereto the current pleading of plaintiff, extracts from the sworn oral deposition testimony of defendant John Q.A. Webb, and extracted exhibits attached thereto; extracts from the sworn oral deposition testi-

mony of the plaintiff, Diane M. Marchal, and extracted exhibits and affidavits attached hereto.

8. Nowhere in the response does the appellant specifically apprise the trial court that the issue of fraudulent concealment would preclude summary judgment. The section immediately preceding the 22–page deposition excerpt argues *the inadmissibility of Dr. Webb's affidavit* because it did not include an adequate statement of the standard of care. The section immediately following the 22–page deposition excerpt is a 17–page excerpt from Dr. Webb's deposition. Referring to the preceding testimony, the appellant then argues that the actions of Dr. Webb during the surgery were negligent. This is followed by allegations that the appellant's lawsuit was filed within two years from the date that

**418**

quires litigants to *expressly* present grounds and issues to the trial court in summary judgments. Tex.R.Civ.P. 166a.

The supreme court has recently examined the specificity required in motions and responses to summary judgments. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337 (1993). In *McConnell,* the supreme court held that the grounds for summary judgment must be expressly presented in the motion itself and not in a brief filed contemporaneously or in the summary judgment evidence. 858 S.W.2d at 337. The court then addressed the specificity required in responses to motions for summary judgments. *Id.* at 341. The court stated:

> Likewise, issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence.

*Id.* We agree with the reasoning of the supreme court. It flies in the face of the clear language of rule 166a of the Texas Rules of Civil Procedure to permit reversal of summary judgments based upon grounds the trial court could have considered, but did not because the issues were not expressly presented.

 On the other hand, the discovery rule need only be raised by the plaintiff in the pleadings, and then the defendant has the burden of negating the discovery rule. *Rose v. Baker & Botts,* 816 S.W.2d 805, 809 (Tex.App.—Houston [1st Dist.] 1991, writ denied). As noted earlier, the difficulty with this situation is that with the passage of article 4590i of the Revised Civil Statutes, the legislature intended to adopt an absolute, two-year statute of limitations and abolish the discovery rule for medical malpractice actions. *Morrison,* 699 S.W.2d at 208; *Neagle,* 685 S.W.2d at 12–15; *DeLuna,* 754 S.W.2d at 367–68; *Tsai,* 725 S.W.2d at 273. Currently, the only way parties can avoid the statute of limitations on a "lack of discovery" theory

the health care treatment provided by Dr. Webb

is to plead that the facts of their specific situation made it *impossible* for them to discover their injury; therefore, application of the statute of limitations to them would violate the open courts provision of the Texas Constitution. *Nelson v. Krusen,* 678 S.W.2d 918, 921 (Tex.1984); *Neagle,* 685 S.W.2d at 12; *Sax v. Votteler,* 648 S.W.2d 661, 667 (Tex.1983).

The appellant failed to plead that the application of the statute of limitations to her would be unconstitutional and in violation of the open courts provision of the Texas Constitution. Her reliance on the discovery rule is misplaced. In any event, the testimony offered by the appellant proves that it was not impossible for her to discover her injury well within the limitations period; thus, the open courts doctrine would be of no benefit to her.

We overrule the appellant's second point of error.

We affirm the judgment of the trial court.