B. False Imprisonment









 


In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-05-01165-CV

____________


TERRY RERICH, Appellant


v.


LOWE'S HOME CENTERS, INC., Appellee






On Appeal from the 149th District Court 

Brazoria County, Texas

Trial Court Cause No. 23157 





MEMORANDUM OPINION


This appeal presents two issues regarding an employer's treatment of an
employee suspected of misconduct. Appellant, Terry Rerich ("Rerich"),
challenges a summary judgment rendered in favor of defendant, Lowe's Home
Centers, Inc. ("Lowe's"). Rerich argues that the trial court erred because summary
judgment evidence raises fact issues regarding whether Lowe's detained Rerich
without her consent and whether Lowe's published untrue statements about Rerich
to persons not subject to a qualified privilege. We affirm.

FACTS

 A. False Imprisonment

Rerich was an assistant department manager of customer service for Lowe's 
when she was terminated in December 2002. She had been an employee of
Lowe's for approximately seven years. Rerich was responsible for the cashiers and
also operated a cash register. In late November 2002, Rerich's cash register was
short $100. Troy Brimage ("Brimage"), a loss prevention manager for Lowe's,
and Beverly Redus ("Redus"), the store's personnel training coordinator,
approached Rerich about the $100 shortage. 

Brimage and Redus met Rerich in an office area at the back of the store. 
Rerich knew Brimage outside of work and was accustomed to giving him a hug
when she saw him in the store. The office had two doors and Rerich was near one
of the doors. Brimage accused Rerich of taking the $100 from the cash register
and told her that the store had a video tape of her taking a $100 bill. Rerich began
explaining what happened regarding the $100 shortage, and Brimage instructed her
to write a statement explaining what happened. She requested to see the receipts
from the day in question to help her remember the events. With the receipts, she
began writing her statement. 

After writing the first page of the statement, Rerich asked to see the video
before completing the statement. The group left the office and went to view the
video in the training room before returning to the office, where Rerich completed
her statement. Rerich claims that when she gave her statement to Brimage, he "got
out of his chair, screamed at me that I had 'slapped him in his face' and was going
to go to jail, and left the room." Rerich then opened the door and asked Brimage to
not take her to jail. Brimage told her that he had already called the police but
would see if he could stop the call. He then radioed to have the call to the police
stopped and told Rerich she would have to cooperate and "write what I tell you." 

Rerich wrote the final part of the statement with Brimage looking over her
shoulder. Rerich claims 

I wrote that last part of the statement in fear that if I did not confess to
taking the $100 I would be immediately arrested. Brimage told me on
several occasions that if I did not cooperate and admit to taking the
$100 I would be arrested. At one point when Brimage had left the
room, I took off my Lowe's apron and stood up to leave. At that time
Brimage returned. He slammed the door and told me that if I left the
interrogation he was calling the cops and I was going to jail. He told
me to sit down and cooperate. During this confrontation I was fearful
and very anxious. I could feel my heart racing and had difficulty
breathing. I was emotional and cried a lot. I signed the statement out
of fear of being arrested. I was not allowed to leave the meeting
because I was told that if I did I would be arrested. 


After Rerich completed the statement based upon what Brimage suggested,
she signed a promissory note to repay the $100 and met briefly with the store
manager for an exit interview. The entire confrontation lasted from approximately
3:00 pm until 5:30 pm, at which time Rerich clocked out and went home. 

 B. Defamation

In the aftermath of Rerich's termination, three store employees made
statements, which Rerich asserts are defamatory. Rob Davis, the store manager,
announced in a manager's meeting regarding Rerich that "She's no longer with us
because of dishonesty." Ron Craddock, the install sales coordinator, told fellow
employee April Gonzales that he heard Rerich say she "must have split
personalities because if she took the money, she doesn't know what she did with
it." Finally Mike Arb, the department manager for millworks, told Gonzales that
he had viewed the security film of Rerich "being caught putting so-called money in
her pocket." In addition to the statements made by these Lowe's employees,
Rerich discussed the situation with four Lowe's employees, stating essentially
"that they took me back there and they fired me, they said I took 100."

PROPRIETY OF SUMMARY JUDGMENT

A. Standard of Review

We review a traditional summary judgment de novo. Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 156 (Tex. 2004). Summary judgment is proper
only when a movant establishes there is no genuine issue of material fact and that
the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);
Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Marchal
v. Webb, 859 S.W.2d 408, 412 (Tex. App.--Houston [1st Dist.] 1993, writ denied). 
A defendant is entitled to summary judgment if the evidence disproves as a matter
of law at least one element of each of the plaintiff's causes of action. Johnson, 891
S.W.2d at 644; Marchal, 859 S.W.2d at 412. Thus, Lowe's is entitled to summary
judgment if it disproved as a matter of law any element of each of Rerich's causes
of action. Once the movant has established a right to a summary judgment, the
burden shifts to the nonmovant. Id. The nonmovant must respond to the motion
for summary judgment and present to the trial court any issues that would preclude
summary judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979); Marchal, 859 S.W.2d at 412.

In reviewing the summary judgment, we must indulge every reasonable
inference in favor of the nonmovant and resolve any doubts in its favor. Johnson,
891 S.W.2d at 644; Marchal, 859 S.W.2d at 412. We will assume that all evidence
favorable to the nonmovant is true. Johnson, 891 S.W.2d at 644; Thompson v.
Vinson & Elkins, 859 S.W.2d 617, 619 (Tex. App.--Houston [1st Dist.] 1993, writ
denied). 


 B. False Imprisonment

The essential elements of false imprisonment are (1) willful detention; (2)
without consent; and (3) without authority of law. Johnson, 891 S.W.2d at 644. A
detention may be accomplished by violence, by threats, or by any other means that
restrain a person from moving from one place to another. Id. at 644-45. Where it
is alleged that a detention is effected by a threat, the plaintiff must demonstrate that
the threat was such as would inspire in the threatened person a just fear of injury to
her person, reputation, or property. Id. at 645; Black v. Kroger Co., 527 S.W.2d
794, 796 (Tex. Civ. App.--Houston [1st Dist.] 1975, writ dism'd).

In Johnson, the plaintiff alleged she was confined to a back office for 
several hours at the Randall's food market where she worked and questioned to the
point of crying. Johnson, 891 S.W.2d at 643-44. She was not restrained by
physical force, but rather alleged that the district manager sternly insisted she "stay
put," which caused her to fear that he would physically prevent her from leaving
had she attempted to leave. Id. at 645. This allegation was negated by evidence
that the plaintiff actually left the area twice and no one tried to stop her. Id. In 
Johnson, the Texas Supreme Court held that, as a matter of law, Randall's did not
willfully detain Johnson. Id. at 646.

The summary judgment evidence in this case similarly defeats the element
of willful detention. Because there is no mention of violence, there must have been
a threat to Rerich to the extent that would inspire a just fear of injury to her person,
reputation, or property to satisfy the element of willful detention. Id. at 645. 
Rerich was in the room with two other individuals: Brimage and Redus. Rerich
knew Brimage on a personal level and was accustomed to giving him a hug when
he was in the store. Redus appeared to say very little during the meeting and
functioned more as an observer. There were two exits to the office and Rerich was
near one of them. There is no evidence that the doors were locked or that Rerich
was ever physically prevented from leaving the office. Rerich told Brimage that
she would not sign anything until she had an opportunity to view the video. At one
point Brimage excused himself from the room, and only Rerich and the silent
Redus were in the room. In her deposition, Rerich admitted that Brimage told her
that she was free to leave the interview at any time she wished. She never asked to
leave and was never told that she could not leave.

Rerich claims that she did not leave out of fear of being arrested. However,
threats of future action, such as to call the police and have the plaintiff arrested, are
not ordinarily sufficient in themselves to effect an unlawful imprisonment, and
instead require other events occurring at the same time, such as extended
interrogation and intimidation. Morales v. Lee, 668 S.W.2d 867, 869 (Tex.
App.--San Antonio 1984, no writ); see also Safeway Stores, Inc. v. Amburn, 388
S.W.2d 443, 447 (Tex. Civ. App.--Fort Worth 1965, no writ) ("Threats of arrest
and imprisonment improperly made to induce a confession may invalidate the
confession[,] but have no bearing on the issue of false imprisonment where the
person is not detained by force or threats of force."). In Morales, the employee
claimed that the employer "got all mad and he had a chart in his hand and he
slammed the chart down on the desk . . . he was screaming and hollering and he
was cussing at me and he was threatening me. He told me 'don't leave.' He said,
'If you leave, I'll call the police and the police will be here in a minute . . . I was
scared of him, I thought he was going to hit me." Id. at 868. The Morales court
found insufficient evidence supporting false imprisonment. Id. at 869.

Rerich does not claim she was threatened by anything other than the
prospect of being arrested, which alone is not sufficient to support false
imprisonment. The burden then shifted to Rerich to present fact issues that would
preclude summary judgment. She has presented no issues to preclude summary
judgment. There is no evidence that she was threatened or intimidated by Brimage
or Redus, and the length of her meeting was not excessive. She spent two and one-half to three hours to discuss what happened, review register receipts, review the
security video, write two statements, sign a promissory note, and complete an exit
interview, all of which she was paid for. She never asked to leave and was told
that she could leave at any time.

We conclude that there is no genuine issue of material fact regarding the
first element of false imprisonment. Thus, Lowe's has established its right to
summary judgment as on this claim, and we need not address the summary
judgment evidence with respect to the remaining elements. C. Defamation

To constitute actionable slander, a defamatory statement must be orally
communicated without legal excuse. Reeves v. W. Co. of N. Am., 867 S.W.2d 385,
393 (Tex. App.--San Antonio 1993, writ denied), overruled on other grounds by,
Cain v. Hearst Corp., 878 S.W.2d 577 (Tex. 1994). The elements are (1) an oral
statement; (2) which is false; (3) which is published to a third person; and (4)
which refers to an ascertainable person. Id. 

Rerich argues that Lowe's did not prove the truth of the statements or that
they made the statements subject to a qualified privilege. There is no need,
however, to engage in an analysis of the elements of defamation because Lowe's
presented uncontroverted summary judgment evidence from Rerich's deposition
that she also published the defamatory statements to employees at Lowe's. In
addition to the statements made by Lowe's employees, Rerich discussed the
situation with four other Lowe's employees, stating essentially "that they took me
back there and they fired me, they said I took $100." These statements bar her
defamation claim. See Hooper v. Pitney Bowes, Inc., 895 S.W.2d 773, 778 (Tex.
App.--Texarkana 1995, no writ) (holding that plaintiff either authorized or
otherwise produced defamatory statements, and such consent is absolute bar to
defamation action). 

CONCLUSIONLowe's defeated the willful detention element of Rerich's claim of false
imprisonment establishing its right to judgment as a matter of law on that claim,
and Rerich produced no fact issue which would preclude summary judgment. 
Because uncontroverted summary judgment evidence establishes that Rerich made
her own statements regarding her termination to Lowe's employees, her claim
against Lowe's for doing the same is barred. 

We affirm the judgment of the trial court. 





 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.