Mary WILSON, Appellant,

v.

JOHN DAUGHERTY REALTORS, INC.; Lee C. Burns & Co., Inc.; Evelyn Cook; K.A. Midler; Citicorp Mortgage, Inc.; John W. McKirahan; Mary Ellen McKirahan; and Realco Enterprises f/k/a Execu–Systems, Inc., Appellees.

No. 01–96–01011–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1998.

Frank W. Mitchell, Houston, for appellant.

Michael E. Mears, William Gray Compton, Dallas, Grant Cook, Mark L. Sax, Grant Parker Harpold, Gary F. Cerasuolo, Todd Charles Benson, Houston, for appellees.

Before SCHNEIDER, C.J., and ANDELL and TAFT, JJ.

## OPINION

ANDELL, Justice.

Wilson appeals a summary judgment rendered in favor of the appellees. We affirm in part, reverse in part, and remand.

## Background

Wilson bought a house from John and Mary McKirahan in 1984. Each of the appellees was involved in the sale or inspection of the house: Realco Enterprises, Inc. f/k/a Execu–Systems Realtors, Inc. was the McKirahans' broker; John Daugherty Realtors, Inc. (Daugherty) was Wilson's broker; Evelyn Cook was Daugherty's agent; Citicorp Mortgage, Inc. (Citicorp) carried the mortgage on the house and hired Lee C. Burns & Co., Inc. (Burns & Co.) to make an appraisal of the house; and K.A. Midler inspected the house. Wilson alleges the appellees represented the home to be of high quality construction, in excellent condition, and without major defects.

During her early years in the house, Wilson's sleeping patterns changed. She experienced flu-like symptoms, headaches, night sweats, vertigo, forgetfulness, and disorientation. By the early 1990's, she developed neurological, sensory-motor, and cardiac problems, chronic fatigue, and immune system dysfunction. Her affect dulled, she became apathetic, and was unable to live and work as she had before. Several doctors and specialists evaluated Wilson, but were unable to determine the cause of her illness.

On August 2, 1993, an inspector discovered Wilson's hot water heater exhaust vent was blocked, preventing carbon monoxide from being exhausted. He also discovered a leak in the gas supply to her dryer. A plumber repaired these items the next day.

On August 23, 1993, a different inspector discovered the gas fireplace did not have a flue or a chimney for ventilation. He disconnected the hot water heater, dryer, and fireplace, and suggested Wilson see a physician concerning possible carbon monoxide poisoning.

On August 25, 1993, Wilson called a toxicologist. He told her he thought carbon monoxide would cause what she had experienced. At her September 1, 1993 appointment, he told her she appeared to have a classic case of slow carbon monoxide poisoning.

Wilson filed suit on August 23, 1995, claiming the appellees (1) violated the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA);[1] (2) were negligent; (3) breached the duty of good faith and fair dealing; (4) breached the earnest money contract; and (5) committed fraud. She further pleaded that her claims were not barred by the applicable limitations periods, because she did not discover or learn of the acts or occurrences in question and the nature of her injury until September 1, 1993.

She sought the following damages: (1) the difference in value between the house as represented at the time of purchase and the actual value at the time of closing; (2) costs to repair and correct defects; (3) past and future medical expenses; (4) lost earnings and lost earning capacity; (5) compensation for her physical pain and mental anguish; (6) attorney's fees; and (7) DTPA treble damages.

■ The appellees answered by general denial and asserted the affirmative defenses of limitations[2] and laches[3] based on Wilson's admission that she noticed signs of carbon monoxide poisoning before August 23, 1993. In addition, Burns & Co. asserted the affirmative defenses of waiver and estoppel. All of the appellees moved for summary judgment based on their affirmative defenses.[4]

1. Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987).

2. The relevant statutes of limitation are: DTPA (two years), Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987); breach of duty of good faith and fair dealing (two years), Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986 & Supp.1998); breach of contract (four years), Tex.Civ.Prac. & Rem.Code Ann. § 16.051 (Vernon 1997); common-law fraud (four years), *Murphy v. Campbell,* 964 S.W.2d 265, 268 (Tex.1997); negligence (two years), Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986 & Supp.1998).

3. The elements of laches are: (1) unreasonable delay by one having legal or equitable rights in asserting them, and (2) a good faith change in position by another to his detriment because of the delay. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 80 (Tex.1989). The appellees have waived error on the issue because they have neither argued, nor cited any evidence regarding laches.

4. Burns & Co.'s motion for summary judgment raised issues other than limitations. We discuss that motion separately, *infra.*

In response, Wilson asserted that the discovery rule tolled limitations and that she had properly filed before the earliest limitations deadline of September 1, 1995, which was two years after the doctor diagnosed her carbon monoxide poisoning.

The court granted summary judgment for the appellees on all claims without stating a specific ground for its ruling. Wilson's sole point of error argues the court erred by rendering summary judgment.

## Standard of Review

In deciding whether there is a disputed material fact issue precluding summary judgment, we take as true evidence favorable to the nonmovant, we indulge every reasonable inference in the nonmovant's favor, and we resolve any doubts in favor of the nonmovant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). We will affirm the summary judgment if any of the theories advanced in the motion for summary judgment is meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). We may not consider any issues as grounds for reversal that were not presented expressly to the trial court by written motion, answer, or other response to the motion for summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 674–75 (Tex.1979).

## Burns & Co.'s Motion for Summary Judgment

■ Burns & Co. filed a motion for summary judgment separate from the other defendants. Burns & Co. asserted: (1) it could not be liable for Real Estate License Act[5] violations alleged in Wilson's petition because the Real Estate License Act does not apply to appraisers; (2) Wilson had no standing to sue as a DTPA consumer, because the mortgage company, not Wilson, contracted Burns & Co. to perform the appraisal; (3) the DTPA, unconscionable conduct, and common-law fraud claims lacked merit because they

alleged Burns & Co. failed to disclose the water heater defect, yet Burns & Co. had no duty to disclose latent defects; and (4) the statute of limitations had run before Wilson filed suit.

In support of its motion, Burns & Co. attached Wilson's original petition, the residential appraisal report, and the contingent and limiting conditions of the appraisal. The report provided that it was: (1) "contingent upon there being no latent defects in the subject improvements"; (2) "contingent upon satisfactory structural and mechanical inspection"; and (3) subject to the attached contingent and limiting conditions. The contingent and limiting conditions provided: "the Appraiser assumes there are no hidden or unapparent conditions of the property ... which would render it more or less valuable. The Appraiser assumes no responsibility for such conditions, or for engineering that might be required to discover such factors."

Wilson's response did not address these express disclaimers, and nothing in the record indicates Burns & Co. had a duty to tell Wilson about the water heater. By offering the appraisal report as proof that it had no obligation, Burns & Co. met its summary judgment burden. Because Wilson offered no summary judgment evidence to raise a fact issue, summary judgment was proper.[6]

We overrule Wilson's sole point of error to the extent that it relates to Burns & Co.

We now address the remaining claims.

## The Discovery Rule

■ The discovery rule tolls limitation for claims on injuries of which the plaintiff could not and did not know at the time they occurred. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). It tolls the applicable statute of limitations when (1) the nature of the injury is inherently undiscoverable, and (2) the evidence of injury is objectively verifiable. *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996).

---

5. Tex.Rev.Civ.Stat.Ann art. 6573a (Vernon Supp. 1998).

6. Wilson also argues she did not have sufficient time and discovery to reply to Burns & Co.'s

motion for summary judgment. She waived error on the issue by not requesting a continuance. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 675 (Tex.1979).

When both of these criteria are met, the cause of action does not accrue until the affected party realizes, or in the exercise of reasonable diligence should realize, the connection between the cause and the injury. *See Childs v. Haussecker*, 41 Tex.Sup.Ct.J. 1101, 1108, 974 S.W.2d 31, 40–41 (1998).[7]

When a plaintiff pleads the discovery rule and a defendant moves for summary judgment on the basis of limitations, the defendant must conclusively prove the date of accrual and negate the discovery rule. *See Weaver v. Witt*, 561 S.W.2d 792 (Tex.1977). To negate the discovery rule, the defendant must prove as a matter of law that there is no genuine issue of material fact about when the plaintiff linked or should have linked the cause to the injury. *See Childs*, 41 Tex.Sup. Ct.J. at 1108, 974 S.W.2d at 40–41.

## Discussion

The remaining appellees collectively assert that the statute of limitations commenced as Wilson began noticing the litany of symptoms she detailed in her petition. In support, they offer Wilson's petition, in which she admits she was aware of health problems as early as six months after moving into the house and concedes that by 1991 she was "constantly slow to understand or fuzzy-headed when people talked to her." They argue that a reasonable person would have visited a doctor or had her house inspected by 1991. Accordingly, they contend, the statute of limitations would have run on all causes of action, even those with four-year statutes of limitations, before Wilson sued on August 23, 1995.[8]

Wilson does not dispute that she knew she was ill before September 1, 1993; nor does she dispute that she knew as early as August 2, 1993 that carbon monoxide was being trapped in her home. However, she claims she did not link the symptoms to the cause

until the toxicologist diagnosed her on September 1, 1995.

We note at the outset that Wilson actually complains of two distinct injuries: (1) that the defendants did not sell her what they promised, and (2) that she suffered personal injury because the defendants were negligent. Her fraud, good faith and fair dealing, and breach of contract claims turn on the first injury (non-disclosure). Accordingly, when she discovered or reasonably should have discovered there was carbon monoxide in her home, the cause of action accrued.

It is undisputed from the record that Wilson became aware of the actual existence of carbon monoxide in her home no later than August 23, 1993. Accordingly, the two-year statute of limitations had run on her DTPA and breach of duty of good faith and fair dealing claims the day before she filed them. *See* TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1987) (DTPA two-year limitations); TEX. CIV.PRAC. & REM.CODE ANN. § 16.003(a) (VERNON 1986 & SUPP.1998) (two-year limitations for breach of duty of good faith and fair dealing). Accordingly, we overrule the sole point of error as it relates to DTPA and breach of duty of good faith and fair dealing claims against the remaining appellees.

For the reason discussed below, however, we find a fact issue exists on the breach of contract, negligence, and fraud claims.

The discovery rule applies equally to breach of contract, negligence, and fraud claims. *See Enterprise–Laredo Assocs. v. Hachar's, Inc.*, 839 S.W.2d 822, 837–38 (Tex. App.—San Antonio), *writ denied per curiam*, 843 S.W.2d 476 (Tex.1992) (applying rule to breach of contract and negligence claims), *and Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997) (applying rule to fraud claim).

Pursuant to her breach of contract and fraud claims, Wilson pleaded the discovery rule and asserted she did not know there was

---

7. The defendants did not contest the *Altai* factors. Rather, they alleged the statute ran because Wilson did not use reasonable diligence to discover her causes of action.

8. Additionally, Citicorp asserts Wilson needed not only to file suit within the limitations period, but also to serve process diligently. *See Eichel v.*

*Ullah*, 831 S.W.2d 42 (Tex.App.—El Paso 1992, no writ); *Knox v. Donovan Lowery Ins. Agency*, 405 S.W.2d 160 (Tex.Civ.App.—Eastland 1966, no writ). Citicorp alleges Wilson did not do the latter. Because Citicorp did not raise the issue in its motion for summary judgment, it is waived. *See City of Houston*, 589 S.W.2d at 675.

carbon monoxide in her home until August 23, 1993. In support of their motions for summary judgment, the appellees offered Wilson's admissions that she realized she was ill long before she was diagnosed, that she was unable to control condensation and mildew in the house, and that her plants were dying. They argue that these admissions are conclusive proof that Wilson should have reasonably known there was carbon monoxide in the house more than four years before she filed suit. As such, they contend summary judgment was proper on the breach of contract and fraud claims, because the statute of limitations had run.

Though Wilson made the admissions cited by the appellees, she also asserted she did not know there was carbon monoxide in the house until August of 1993. Thus, the appellees' tender of Wilson's petition did not conclusively negate the discovery rule.

We hold the court erred by rendering summary judgment for the remaining appellees on the breach of contract and fraud claims.

■■■ Regarding Wilson's personal injury claim, the appellees offered Wilson's admissions that she knew she was ill long before August 23, 1993, when the inspector told her to see a doctor about possible carbon monoxide poisoning. Accordingly, they argue that her claim, filed August 23, 1995, was barred by the two-year negligence statute of limitations. See TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1996 & Supp.1998).

■■■ We disagree. Though Wilson admitted she knew of her illness and the presence of carbon monoxide, those admissions did not conclusively negate the possibility that Wilson was reasonable in first linking the cause to the injury on September 1, 1993, as she alleged. See Childs, 41 Tex.Sup.Ct.J. at 1111–13, 974 S.W.2d at 44–45 (holding discovery rule tolled statute while appellant knew he was ill, suspected silicosis, filed and dismissed silicosis suit, and saw several doctors, but could not get diagnosis until 20 years after first discovering symptoms); Allen v. Roddis Lumber & Veneer Co., 796 S.W.2d 758, 761 (Tex.App.—Corpus Christi 1990,

writ denied) (finding discovery date fact question existed where appellant suspected formaldehyde in paneling caused health problems, but swore in affidavit she did not know it was cause until clean air test).[9] In other words, by offering Wilson's petition, the appellees presented contradictory, rather than conclusive proof that the statute had run.

Because the appellees did not conclusively prove accrual before August 23, 1993, they were not entitled to summary judgment on Wilson's negligence claim.

We sustain the sole point of error as it relates to the breach of contract, fraud, and negligence claims against all appellees other than Burns & Co.

In conclusion, we affirm summary judgment to the extent it dismisses: (1) all claims against Burns & Co.; and (2) all DTPA and breach of duty of good faith and fair dealing claims against the other appellees. We reverse the remainder of the summary judgment and remand the cause to the trial court.

**9.** We note that a final diagnosis is not always necessary before a latent injury cause of action can accrue. See Childs, 41 Tex.Sup.Ct.J. at 1109, 974 S.W.2d at 41–42.