Opinion issued December 19, 2002














In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-98-00922-CV
____________

JAMES M. WHEELER, M.D., Appellant

V.

THE METHODIST HOSPITAL, Appellee




On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 96-57773




OPINION ON REHEARING
          Appellant’s motion for rehearing is denied, the opinion issued in this case on
December 28, 2000 is withdrawn, and the following opinion is issued in its place,
changing our treatment of appellant’s issues on discovery (one, two, three, five, and
six) and immunity (seven). 
          Appellant, James M. Wheeler, M.D., appeals a summary judgment in favor of
appellee, The Methodist Hospital. We reverse and remand.
I.
Factual Background

          Wheeler is a physician specializing in obstetrics and gynecology. From
approximately July 1988 until March 1995, he had privileges to practice at Methodist. 
During this time, Wheeler entered into a practice improvement plan (PIP) that
restricted his practice. As part of the PIP, he was required to consult with certain
doctors in connection with his treatment of patients. In March 1995, Wheeler
performed a successful outpatient procedure, after which the patient requested to go
home. When Wheeler attempted to contact certain physicians for consultation (to
comply with the PIP), his calls were not returned. Rather than wait for a returned
phone call from one of these physicians while the patient remained in the hospital,
Wheeler allowed the patient to go home as requested. Shortly thereafter, on March
17, 1995, Wheeler was contacted by telephone by Drs. David Zepeda and Terry
Simon. (Dr. Zepeda was the acting chief of staff because the chief of staff, Dr. Joe
Leigh Simpson, was out of town.) Later that same day, Wheeler voluntarily resigned
from Methodist. The substance of the telephone conversation between Wheeler,
Zepeda, and Simon is disputed—Wheeler said they informed him that he would be
suspended when Dr. Simpson returned from out of town because, by discharging his
patient before obtaining a consultation, he did not comply with the PIP; Drs. Zepeda
and Simon said they informed Wheeler that he was suspended. 
          On March 24, 1995, Methodist notified Wheeler by letter that his voluntary
resignation had been received. The letter stated: 
This will serve as official notification of the acceptance of your
voluntary resignation from the Medical Staff of The Methodist Hospital,
notice of which was received in the Hospital’s Medical Staff Services
Department at 3:30 p.m., on Friday March 17, 1995. 
 
Please be advised that as your Medical Staff membership and
clinical privileges were suspended at the time of your resignation, the
Hospital will list your status as suspended, until final approval of your
deletion from the Medical Staff by the Board of Directors, whose next
meeting is scheduled for Wednesday, July 26, 1995. 
 
As you voluntarily resigned while under investigation, the
Hospital, as required, will report this action to the National Practitioner
Data Bank through the Texas State Board of Medical Examiners. 
 
Should you have any questions, please feel free to contact Mrs.
Jane B. Lee, Senior Vice President, or Mrs. Claire Reid, Manager,
Medical Staff Services. 

(Emphasis added).

          As stated in the letter to Wheeler, Methodist issued an adverse action report
(the “Report”) to the National Practitioner Data Bank (“the Data Bank”).


 The
Report, which identifies Methodist as the reporting entity and the individual
submitting the report as Claire W. Reid (the manager of Methodist’s medical staff
services), provides as follows: 
Date of the Report: 03/20/95
Report Type: Unknown
Type of Action Taken: Clinical Privileges (C)
Action Classification: VOL SURR OF PRIV: OTHER (63590)
 
Date of the Action: 03/17/95
Length of Action: PERMANENT
Effective Date: 03/17/95
 
Reporter’s Description of Action: On 3/17/95, James M.
Wheeler, M.D., was summarily suspended for failure to
adhere to the terms of a practice improvement plan (PIP). 
The PIP was developed based on concerns identified by the
serviceQM [sic] committees during intensive review of his
cases. Concerns included: performing cystoscopies
without delineated privileges; frequent lavh [sic]
complications; failure to secure timely surgical consults;
questionable indications for induction of labor; unusual
forcepts [sic] complications; failure to respond to
emergency calls; following notice of suspension, Dr.
Wheeler resigned later that same day.

Wheeler, however, claims the statement in the Report that he was “summarily
suspended for failure to adhere to the terms of a PIP” is false. 
II.
Procedural History

          On November 13, 1996, Wheeler filed suit against Methodist alleging
defamation and business disparagement.


 Methodist responded with a general denial
and the affirmative defenses of (1) the statute of limitations, (2) statutory privileges
under the Texas Medical Practice Act (TMPA), article 4495b of the Texas Revised
Civil Statutes,


 and the Health Care Quality Improvement Act (HCQIA), 42 U.S.C.A.
§§ 11101-52, and (3) Texas common law privileges. Based on these same affirmative
defenses, Methodist also filed a motion for summary judgment under Rule 166a(b).


 
The trial court granted summary judgment in favor of Methodist without stating the
precise grounds for its decision. 
          Wheeler appealed the summary judgment. After reviewing the appeal, this
Court determined that the judgment, which lacked a “Mother Hubbard clause,” did
not dispose of Wheeler’s disparagement claim. Because Methodist did not challenge
Wheeler’s claim for business disparagement in its motion for summary judgment, we
determined the summary judgment was interlocutory and abated the appeal with
instructions that Wheeler show us within 60 days that the business disparagement
claim was disposed of, or the appeal would be dismissed for want of jurisdiction. 
Wheeler obtained a severance of the business disparagement claim within the
requisite time period, rendering the summary judgment final for the purposes of this
appeal. Thus, Wheeler’s only claim before us on appeal is for defamation.
III.
Standard of Review

          Summary judgment is proper only when a movant establishes that there is no
genuine issue of material fact and that the movant is entitled to judgment as a matter
of law. TEX. R. CIV. P. 166a(c); Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d
640, 644 (Tex. 1995); Marchal v. Webb, 859 S.W.2d 408, 412 (Tex. App.—Houston
[1st Dist.] 1993, writ denied). A defendant is entitled to summary judgment if the
evidence disproves as a matter of law at least one element of each of the plaintiff’s
causes of action or if the evidence establishes an affirmative defense as a matter of
law. Johnson, 891 S.W.2d at 644; Marchal, 859 S.W.2d at 412. Once the movant
has established a right to a summary judgment, the burden shifts to the nonmovant,
who must respond and present any issues that would preclude summary judgment. 
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979);
Marchal, 859 S.W.2d at 412. 
          On appeal, we cannot consider any ground for reversal that was not expressly
presented to the trial court by written motion, answer, or other response to the motion
for summary judgment. Clear Creek Basin Auth., 589 S.W.2d at 677; Hussong v.
Schwan’s Sales Enter., Inc., 896 S.W.2d 320, 323 (Tex. App.—Houston [1st Dist.]
1995, no writ). We will affirm the summary judgment if any theory advanced in the
motion for summary judgment is meritorious. Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 626 (Tex. 1996); Cigna Ins. Co. v. Rubalcada, 960 S.W.2d 408, 411
(Tex. App.—Houston [1st Dist.] 1998, no pet.). 
          Methodist argued in the trial court that it was entitled to summary judgment
because: (1) Wheeler’s defamation claim was barred by the statute of limitations; (2)
Methodist was entitled to statutory immunity for its actions; and (3) Methodist’s
communications were privileged. On appeal, Wheeler asserts in his first three issues
that the trial court erred in denying his motion to compel the production of discovery.


 
In his fourth through ninth issues, Wheeler asserts the trial court improperly granted
summary judgment in favor of Methodist. 
IV.
Analysis

          We need not determine whether the trial court erred in denying Wheeler’s 
discovery requests if Methodist was entitled to summary judgment as a matter of law
based on any of its affirmative defenses. Therefore, we begin our analysis with
Wheeler’s fourth issue.
A.      Issue four—Whether Wheeler’s claim is barred by limitations.
 
          Methodist argued in its summary judgment motion that it was entitled to
summary judgment as a matter of law, because: (1) Wheeler’s defamation claim was
filed after the one-year statute of limitations expired; (2) the discovery rule did not
apply to toll the limitations period; or (3) if the discovery rule did apply, Wheeler did
not exercise reasonable care and diligence to discover the nature of his injury. In his
fourth issue, Wheeler argues the trial court erred in granting summary judgment
because Wheeler’s claim is not barred by limitations, or, alternatively, because there
is a genuine issue of material fact regarding the discovery rule exception.
          1.       Accrual in a defamation cause of action
          When the statute of limitations expired depends on when Wheeler’s cause of
action accrued. Generally, a defamation claim accrues when the matter is published
or circulated. Roe v. Walls Regional Hosp., Inc., 21 S.W.3d 647, 651 (Tex.
App.—Waco 2000, no pet.). However, the discovery rule applies to a defamation
claim if the matter is not public knowledge. Marshall Field Stores, Inc. v. Gardiner,
859 S.W.2d 391, 394 (Tex. App.—Houston [1st Dist.] 1993, writ dism’d w.o.j.); see
Kelley v. Rinkle, 532 S.W.2d 947, 949 (Tex. 1976). When the discovery rule applies,
it defers the accrual of a cause of action until a plaintiff discovers or, through the
exercise of reasonable care and diligence, should discover the nature of the injury. 
Childs v. Haussecker, 974 S.W.2d 31, 37 (Tex. 1998); Wilson v. John Daugherty
Realtors, Inc., 981 S.W.2d 723, 726-27 (Tex. App.—Houston [1st Dist.] 1998, no
pet.). 
          By federal and state law, Methodist’s Report to the Data Bank is not a public
record—information reported to the Data Bank is considered confidential, and
disclosure of such information is limited to hospitals, boards of medical examiners
or other State licensing boards, and physicians requesting information about
themselves.


 See 45 C.F.R. § 60.11(a)(1)-(7); 42 U.S.C.A. § 11137(b)(1); TEX. REV.
CIV. STAT. ANN. art. 4495b § 5.06(c) (repealed 1999) Thus, because the Report is not
a matter of public knowledge, the limitations period on Wheeler’s defamation claims
began to run when he learned of, or should by reasonable diligence have learned of,
the existence of the Report. See Kelley, 532 S.W.2d at 949 (addressing
commencement of limitations period for defamation based on credit report).
          2.       Burden of proof for the discovery rule
          When, as here, a plaintiff pleads the discovery rule and a defendant moves for
summary judgment on the basis of limitations, the defendant must conclusively prove
the date of accrual and negate the discovery rule. See Weaver v. Witt, 561 S.W.2d
792, 794 (Tex. 1977); Wilson, 981 S.W.2d at 727. To negate the discovery rule,
Methodist had the burden to prove, as a matter of law, that there is no genuine issue
of material fact about when Wheeler discovered or, through the exercise of reasonable
diligence, should have learned of the existence of the Report. See Childs, 974 S.W.2d
at 44. When Wheeler discovered or should have discovered the existence of the
Report, and whether Wheeler exercised due diligence, are questions of fact. See
Southwestern Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.—Houston
[1st Dist.] 1992, writ denied); Heron Fin. Corp. v. U.S. Testing Co., Inc., 926 S.W.2d
329, 332 (Tex. App.—Austin 1996, writ denied). However, if reasonable minds
could not differ about the conclusion to be drawn from the facts in the record, then
the start of the limitations period may be determined as a matter of law. Childs, 974
S.W.2d at 44.
          3.       Methodist’s summary judgment evidence
          Wheeler filed suit against Methodist on November 13, 1996, more than one
year after Methodist filed the Report with the Data Bank on March 20, 1995. 
Therefore, Methodist argued that Wheeler’s claim is barred by the one-year
limitations period for defamation claims. See TEX. CIV. PRAC. & REM. CODE ANN. 
§ 16.002(a) (Vernon 1999). As proof, Methodist submitted a copy of the Report that
indicates it was made to the Board of Medical Examiners on March 20, 1995, and was
processed by the Data Bank on April 19, 1995.
          To negate the discovery rule, Methodist argued that Wheeler knew of the
Report as early as March 24, 1995, the date Methodist sent him the letter that
accepted his voluntary resignation and noted that Methodist would list Wheeler’s
status as “suspended” and would, “as required, . . . report this action to the National
Practitioner Data Bank through the Texas State Board of Medical Examiners.” It is
undisputed that Wheeler did not respond in any way to this written notice.
          In addition to evidence of the March 24, 1995 letter, Methodist provided the
trial court with Wheeler’s deposition testimony. Wheeler admitted he was notified
of the filing of the Report, and that he did not act when he learned about it:
Q:Well, did you – upon receiving that [March 24, 1995 letter], did
you call or write to anybody at Methodist and say: What in the
world are you talking about?
 
A:I was too shocked to do anything besides talk to my lawyer.
 
Q:Well, not necessarily at the moment, but at any time after you
received that [letter], did you contact anybody at Methodist and
say: What do you mean under investigation or suspended?
 
A:I was too frightened. No, I did not.
 
Q:Why were you too frightened?
 
A:These are extremely strong words.
 
Q:Well, if you didn’t have any understanding that you were under
investigation or that you’d been suspended, why wouldn’t you
contact somebody at the hospital to say is there a mistake or
what’s the basis for saying this or some action to that effect?
 
A:By the time I got this letter, I became immediately suspect of the
entire process through which I had been through; therefore, I
didn’t think talking to anyone connected with this issue was going
to help me. The letter specifically says if I have any questions. I had no questions. The letter is very clear.

          Methodist also presented evidence that Wheeler received two separate letters
from CIGNA Healthcare inquiring about the Report. Wheeler had submitted a
credentialing application to become a healthcare provider for CIGNA Healthcare. In
October 1995, CIGNA sent its first letter notifying Wheeler of the Report. On
December 14, 1995, CIGNA sent its second letter requesting that Wheeler provide
an explanation of the Report. Wheeler still took no action regarding the Report until
October 1996, when he finally requested a copy of it. He testified about the letters
from CIGNA as follows: 
Q:Now, if you got this [second] notice in December ‘95 from
CIGNA that such a data bank inquiry–record existed, I mean why
did you wait until October of ‘96 to ask for it?
 
A:I specifically did not know at that time that I as an individual had
access to that. So that’s ignorance on my part. And I was also
basically fearful and recoiling from the CIGNA letter as to, you
know, was there anything I could do besides just hole up and
hide. 
Methodist argued that this evidence established, as a matter of law, that Wheeler
knew of the existence of the Report on March 24, 1995, and he did not exercise due
diligence in discovering its contents. 
                    4.       Wheeler’s controverting evidence
          Wheeler argued his defamation cause of action accrued on two possible dates:
(1) December 14, 1995, when he first learned from CIGNA Health Care that the
Report was causing him a problem; and (2) October 8, 1996, when he requested a
copy of the Report from the Data Bank. He also presented deposition testimony of
at least five other physicians who did not know how to request information from the
Data Bank, arguing that his ignorance of the Data Bank’s procedures was justified. 
Thus, his argument is that, while he knew the Report existed as early as March 1995,
he did not know its contents until much later, and that is when the statute of
limitations should commence. 
          Wheeler argues that he did not make any inquiries into the Report after
receiving the March 24, 1995 letter because (1) he was too scared to inquire, and (2)
he did not know how to get the information from the Data Bank. Neither of these
reasons satisfies the requirement that Wheeler exercise reasonable diligence in trying
to discover his cause of action. 
          With the evidence presented, we conclude that reasonable minds could not
differ about the conclusion to be drawn from the facts in the record—Wheeler knew
about Methodist’s Report to the Data Bank on March 24, 1995, and he did nothing
to determine its contents. Even if Wheeler (and other physicians) did not know how
to obtain information from the Data Bank, he did not show that he even tried to obtain
any information. Instead, he chose to ignore it, or as he stated, “hole up and hide.” 
          We hold that the limitations period on Methodist’s initial reporting began to
run on March 24, 1995. Thus, because Wheeler did not file this lawsuit until more
than one year after this date, the statute of limitations bars his defamation claim to the
extent that it is based solely on this initial disclosure.
          5.       Republication of the Report by the Data Bank
          Wheeler further argues that Methodist is liable for defamation resulting from
the Data Bank’s republications of Methodist’s Report. Pursuant to the “Disclosure
History” section of the Report, it was released by the Data Bank on November 14,
1995 and August 6, 1996, both within one year of November 13, 1996, the date
Wheeler filed suit against Methodist. Wheeler testified that he lost an association
with CIGNA and patients, and several Methodist physicians testified in their
depositions that loss of their privileges at Methodist would affect them financially.
          In a factually similar appeal involving republication by the Data Bank, the
medical center argued that the doctor’s defamation claim was barred by the statute of
limitations. See Stephan v. Baylor Med. Ctr., 20 S.W.3d 880, 888 (Tex.
App.—Dallas 2000, no pet.). Conversely, the doctor argued that because the
hospital’s report continued to be disseminated by the Data Bank, a new cause of
action, together with a new limitations period, arose each time the Data Bank
transmitted the report. Id. 
          The Stephan court agreed with the doctor, concluding that “[a] physician may
suffer a new and distinct injury with each republication of an allegedly defamatory
report by the [Data Bank]” and that, “[a]ccordingly, each transmission of the report
is a new publication and a possible separate tort.” Id. at 889. The court noted that,
in cases of alleged libel in mass media communications, the plaintiff’s cause of action
generally accrues on the last day of the mass distribution of the printed defamatory
statement, rather than on the dates of the secondary distributions or retail sales of the
printed matter. Id.; see also Willamson v. New Times, Inc., 980 S.W.2d 706, 710
(Tex. App.—Fort Worth 1998, no pet.) (discussing single publication rule); Holloway
v. Butler, 662 S.W.2d 688, 692 (Tex. App.—Houston [14th Dist.] 1983, writ ref’d
n.r.e.) (same). Nevertheless, the court analogized the confidential and restricted
dissemination of a Data Bank report to credit reports, which the United States Court
of Appeals, Fifth Circuit, has found can create a new cause of action with each
transmission of a credit report to a new audience. Stephan, 20 S.W.3d at 889
(discussing Hyde v. Hibernia Nat’l Bank, 861 F.2d 446, 450 (5th Cir. 1988)).
          Although a party is generally not liable for a republication of a defamatory
statement by another, “[i]f a reasonable person would recognize that an act creates an
unreasonable risk that the defamatory matter will be communicated to a third party,
the conduct becomes a negligent communication, which amounts to a publication just
as effectively as an intentional communication.” Marshall, 859 S.W.2d at 396; see
also Restatement (Second) of Torts § 577, cmt. k (1977). We conclude that the Data
Bank’s republications of Methodist’s Report constitute discrete, actionable events for
limitations purposes. Because the Data Bank’s republications occurred within one
year from the date when Wheeler filed suit, his defamation claim is not barred by
limitations to the extent that it is based on those republications. We sustain
Wheeler’s fourth issue.
B.      Issues one, two, three, five, and six—Whether Wheeler was precluded
from challenging Methodist’s summary judgment motion because of the
erroneous denial of discovery
          In its summary judgment motion and on appeal, Methodist argues it was
entitled to summary judgment as a matter of law, because it is immune from civil
liability under state law and Wheeler has not established a prima facie showing that
Methodist acted with malice or actual knowledge of falsity when it issued the report.
          In his first three interrelated issues, Wheeler argues the trial court abused its
discretion in disallowing his discovery requests because the requested discovery (1)
was not privileged, (2) was necessary to Wheeler to provide an adequate response to
Methodist’s summary judgment motion, and (3) was necessary to provide a complete
record for this Court on appeal. In his fifth issue, Wheeler asserts the trial court erred
in overruling his objections to Methodist’s summary judgment evidence because
Wheeler was entitled to the discovery requests that the trial court denied. In his sixth
issue, Wheeler asserts the trial court erred in granting Methodist’s summary judgment
motion because he raised a genuine issue of fact regarding whether Methodist acted
with malice or, alternatively, he was prevented from doing so because the trial court
erroneously denied his discovery requests.
          Wheeler’s discovery arguments in issues one, two , three, five and six turn on
two underlying issues—(1) whether the trial court abused its discretion by denying
Wheeler discovery to which he was entitled and (2) whether Wheeler was precluded
from challenging Methodist’s qualified immunity because the discovery requests
were denied.
          1.       Methodist’s peer review immunity and privilege
          To address these issues, we consider the following law governing Methodist’s
assertion of peer review privilege and immunity. 
                    a.       Immunity for peer review activity
          State and federal law requires hospitals to report the results of peer review
actions, including the acceptance of the surrender of privileges, to a state medical
review board (which in turn reports the information to the Data Bank). See TEX.
REV. CIV. STAT. ANN. art. 4495b (repealed 1999), § 5.06(b); 42 U.S.C.A. §
11133(a)(1). State law (the TMPA) provides immunity from liability for a hospital’s
peer review activity or peer review report as follows:
          (l)      A cause of action does not accrue against the members, agents, or
employees of a medical peer review committee or against the
health-care entity from any act, statement, determination or
recommendation made, or act reported, without malice, in the
course of peer review as defined by this Act.
 
          (m)    A person, health-care entity, or medical peer review committee,
that, without malice, participates in medical peer review activity
or furnishes records, information, or assistance to a medical peer
review committee or the board is immune from any civil liability
arising from such an act.
 
TEX. REV. CIV. STAT. ANN. art. 4495b, § 5.06(l), (m) (emphasis added). 
          The Texas Supreme Court has held that, for claims against a hospital falling
within the ambit of the TMPA, the TMPA’s “immunity provisions prescribe a
threshold standard of malice to state a cause of action,” a requirement that “does not
violate the Open Courts Provision of the Texas Constitution.” Agbor, 952 S.W.2d at
509.


 Agbor relied upon the definition of malice set forth in section 41.001(7) of the
Texas Civil Practice and Remedies Code.
          (A)    a specific intent by the defendant to cause substantial injury to the
claimant; or
 
          (B)    an act or omission:
                    (i)      which when viewed objectively from the standpoint of the
actor at the time of its occurrence involves an extreme
degree of risk, considering the probability and magnitude
of the potential harm to others; and
 
                    (ii)     of which the actor has actual, subjective awareness of the
risk involved, but nevertheless proceeds with conscious
indifference to the rights, safety, or welfare of others.

Agbor, 952 S.W.2d at 506 (quoting from TEX. CIV. PRAC. & REM. CODE ANN.
§ 41.001(7) (Vernon 1997)).
          Thus, the TMPA requires a plaintiff suing a defendant for covered activities to
make the threshold showing that the defendant acted (1) with the specific intent to
harm the plaintiff or (2) with actual awareness of an extreme degree of risk as well
as conscious indifference to the welfare of others. 
          Under federal law (the HCQIA), a hospital that reports information regarding
peer review is similarly immune from liability for that report if it provides the
information without knowledge of its falsity. See 42 U.S.C.A. § 11137(c); Davis v.
Methodist Hosp., 997 S.W.2d 788, 794 (Tex. App.—Houston [1st Dist.] 1999, pet.
denied).
          When, as here, a defendant files a summary judgment motion based in part on
the plaintiff’s failure to provide evidence of malice under the TMPA, the burden
shifts to the plaintiff to produce proper summary judgment evidence raising a genuine
issue of material fact on the existence of malice. See TEX. R. CIV. P. 166a(i); Denton,
998 S.W.2d at 298-99 (determining that plaintiff failed to establish malice under
TMPA in response to defendant’s no-evidence summary judgment motion). Thus,
Methodist is entitled to immunity under state law if it did not act with malice.



                    b.       Peer review discovery privilege
          Section 5.06(s)(3) of the TMPA provides hospitals with a broad privilege
against discovery of the peer review process:
In no event may . . . reports and records received, maintained, or
developed by the board, by a medical peer review committee, . . . or by
a health-care entity be available for discovery or court subpoena or
introduced into evidence in a medical professional liability suit arising
out of the provision of or failure to provide medical or health-care
services, or in any other action for damages. 
TEX. REV. CIV. STAT. ANN. art. 4495b, § 5.06(s)(3) (repealed 1999). The TMPA
also provides generally that all proceedings and records of a medical peer review
committee are confidential, and all communications made to a medical peer review
committee are privileged. TEX. REV. CIV. STAT. ANN. art. 4495b § 5.06(g) (repealed
1999). This information is not admissible in a civil judicial or administrative
proceeding without written waiver. TEX. REV. CIV. STAT. ANN. art. 4495b §§
5.06(j), (s)(3) (repealed 1999).



          2.       Whether Wheeler raised a fact question regarding malice under the
existing record

          Methodist is entitled to immunity for its peer review activity and the Report to
the Data Bank if it acted without malice. Using Agbor’s definition of malice, the
question before us is whether Wheeler raised a fact question that Methodist (1) issued
a false peer review report with the specific intent to harm Wheeler or (2) acted with
actual awareness of an extreme degree of risk of harm to Wheeler, as well as
conscious indifference to his welfare. 
          However, the truth or falsity of Methodist’s Report turns on whether Methodist
suspended Wheeler because it concluded that he did not adhere to the terms of the
PIP, not whether Wheeler actually had problems in his performance warranting the
PIP or actually failed to adhere to the PIP’s terms. See Davis, 997 S.W.2d at 794 n.3
(noting that truthfulness of adverse action report turned on whether hospital
concluded plaintiff was “incompetent, negligent, or guilty of malpractice,” not
whether he merited the conclusion).
          Wheeler contends the affidavit evidence in the record presently before us
shows that Methodist issued a false report with malice. Specifically, Wheeler asserts
that his testimony and that of other doctors at Methodist established that:
          1.       a summary suspension would be warranted only for more egregious
offenses than that for which Wheeler was suspended;
 
          2.       releasing a patient after a successful procedure was not a matter that
required another doctor’s permission under the PIP;
 
          3.       the same doctor who testified that he decided Wheeler should be
suspended later approved Wheeler’s credentials at St. Luke’s Episcopal
Hospital;
 
          4.       Methodist (according to Wheeler’s affidavit testimony) did not follow
the requirements of its bylaws;
 
          5.       a history of antagonism and conflict had developed between Wheeler
and those who ordered his suspension;
 
          6.       the doctors who ordered his suspension did not review his case or seek
information regarding his case;
 
          7.       other doctors (according to Wheeler’s affidavit) made negative
comments about Wheeler that were collateral to any real concerns about
patient safety (and, in particular, remarked on Wheeler’s “attitude”); and
 
          8.       at least one doctor discussed Wheeler’s purported arrogance.
 
Wheeler asserts that a federal case has similar factors to those listed above and
concludes the hospital acted with malice. See Rea v. Hospital Corp. of Am., 892 F.
Supp. 821, 829-30 (N.D. Tex. 1993), rev’d in part, 95 F.3d 383 (5th Cir. 1996). 
Methodist replies that the doctors Wheeler cites each testified during discovery that
Methodist’s actions were taken in the course of peer review, and without malice or
ill will towards Wheeler. Methodist also contends that Wheeler was suspended for
a variety of concerns, not simply for the discharge of a patient without approval, the
isolated event on which Wheeler primarily focuses on appeal. 
          Malice under the TMPA is a question of purely state law, and much of our
TMPA case law developed after Rea. Assuming Wheeler’s characterization of the
evidence is accurate, it does not show Methodist suspended him for reasons other
than its conclusion that he had not conformed to the PIP.


 
          We find that Wheeler failed to raise a genuine issue of material fact regarding
whether Methodist acted with malice.
          3.       Whether the trial court erred in denying Wheeler’s discovery
requests

          Wheeler argues in his sixth issue that, even if the record before us does not
raise an issue of fact as to Methodist’s malice, the trial court abused its discretion by
denying him discovery that would have allowed him to raise a genuine issue of
material fact regarding whether Methodist acted with malice. 
 
                    a.       Standard of review governing denial of discovery requests

          We review a trial court’s ruling on discovery requests for abuse of discretion. 
See General Tire, Inc. v. Kepple, 970 S.W.2d 520, 526 (Tex. 1998). A trial court
abuses its discretion when it makes a decision so arbitrary and unreasonable as to
amount to a clear and prejudicial error of law. Walker v. Packer, 827 S.W.2d 833,
839 (Tex. 1992). We may not substitute our judgment for that of the trial court when
the decision turns on the resolution of fact issues. Id. at 840. However, our review
is less deferential as to legal principles; a trial court’s failure to analyze or apply the
law correctly constitutes an abuse of discretion. Id.
          The trial court’s discovery decision is an abuse of discretion when:
 
          1.       the appellate court would not be able to cure the trial court’s
discovery error, such as when privileged information or trade
secrets would be revealed or a disproportionate burden would be
imposed on the producing party to furnish patently irrelevant or
duplicative documents;
 
          2.       the party’s ability to present a viable claim or defense is
compromised or vitiated by the erroneous discovery ruling to the
extent that it is effectively denied the ability to develop the merits
of its case; or 
 
3.the trial court’s discovery order disallows discovery which cannot
be made a part of the appellate record, thereby denying the
reviewing court the ability to evaluate the effect of the trial
court’s error.

In re Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1998).
          Here, the party claiming discovery privileges, Methodist, had the burden to
prove that the discovery Wheeler sought was privileged. See In re The Methodist
Hospital, 982 S.W.2d 112, 114 (Tex. App.—Houston [1st Dist.] 1998, no pet.). We
must determine whether Methodist submitted sufficient evidence to establish the
privileges. See id. 
                    b.       The medical peer review privilege and its exceptions
                              (1)     The statutory provisions for immunity
          All proceedings and records of a medical peer review committee (“the MPRC”)
are confidential, and all communications made to the MPRC are privileged. TEX.
REV. CIV. STAT. ANN. art. 4495b § 5.06(g) (repealed 1999). This information is not
subject to subpoena or discovery and is not admissible in a civil judicial or
administrative proceeding without written waiver. Id. §§ 5.06(j), (s)(3) (repealed
1999). 
                              (2)     Exceptions to the medical peer review privilege
          In Irving Healthcare System v. Brooks, the Texas Supreme Court set out the
parameters of this privilege and its exceptions for claims of libel and slander against
a medical center. See 927 S.W.2d 12, 19-24 (Tex. 1996). Statutory confidentiality
provisions do not prevent discovery from alternative sources—e.g., documents
provided to the MPRC that are shared with individuals “that do not come under the
umbrella of article 4495b,” documents obtained by the committee that are within the
public domain, or routine business records that the committee has reviewed or
considered. Id. at 18. In other words, records or documents are not privileged simply
because the MPRC has reviewed them. 
          The MPRC can be the source of document discovery when privilege has been
waived, and a hospital or physicians included within the protections of section 5.06
can be the source of document discovery when they possess “the documents in a
nonprivileged capacity, such as the custodian of a patient’s medical records.” Id. at
18. Deposition questions about communications to the MPRC and what it considered
are subject to objection as information “included within all proceedings of and all
communications made to” the MPRC. Id. Thus, on one hand, providing information
to the MPRC does not shield and render undiscoverable otherwise discoverable
information; on the other hand, a party seeking discovery cannot circumvent the
privilege by specifically requesting information furnished to the committee. 
          A doctor affected by a peer review decision 

is entitled to written copies of any recommendations or final decisions
of [a health-care facility]’s medical peer review committees that could
result in censure, suspension, restriction, limitation, revocation, or denial
of membership or privileges in a health-care entity.
.
Id. at 21(citing section 5.06(i) of the TMPA). Further, the committee’s final decision
must contain “a statement of the basis for the decision.” TEX. REV. CIV. STAT. ANN.
art. 4495b, § 5.06(I) (repealed 1999).



          Finally, physicians seeking to establish malice can obtain copies of documents
they furnished to or received from an MPRC. See Irving Healthcare, 927 S.W.2d at
21. While “communications to [an MPRC] are privileged from discovery by third
parties under the statutes, a physician may compel production of his or her own
direct communications with the committee.” Id. (emphasis added). However, the
hospital’s duty to disclose such information to the doctor does not waive
confidentiality as to third parties who also seek to obtain those documents. See id.
                              (3)     Categories of discovery to which Wheeler is entitled
          Summarizing and applying these rules, we conclude that Methodist’s statutory
privilege for peer review activities does not bar Wheeler from obtaining the following
from Methodist:
          Discovery directed to a non-MPRC source:
          1.       documents within the public domain that the MPRC has reviewed or
considered (i.e., information available from a source other than an
MPRC, such as routine business records or medical records, for which
no other privilege applies, in Methodist’s possession as custodian of the
records); 

          Discovery directed specifically to the MPRC: 
 
          2.       recommendations or final decisions (including a statement of the basis
for the decision) of the MPRC that could result in censure, suspension,
restriction, limitation, revocation, or denial of membership or privileges
in a health-care entity;
 
          3.       communications between Wheeler and the MPRC; and
 
          4.       documents that Methodist or the MPRC has waived the privilege by
sharing with individuals not under the umbrella of article 4495b.
          Other than Wheeler’s statutory right (under section 5.06 of the TMPA) to
copies of recommendations or final decisions reached in the peer review process, and
his right (under Irving Healthcare) to discovery of his own communications with the
MPRC, his discovery requests must be for nonprivileged documents from
nonprivileged sources. See Irving Healthcare, 927 S.W.2d at 18, 21. 
                    c.       Wheeler’s discovery requests
          The trial court denied each of the 71 discovery requests listed in Wheeler’s
motion to compel production, and he contests 49 of these rulings on appeal. The
blanket ruling denied some discovery requests to which Wheeler was entitled, and
compromised his ability to discover evidence of malice, if in fact it existed, and to
maintain his claim against Methodist. Furthermore, the trial court refused in camera
review when it issued the order denying discovery. Because the record has not been
preserved for appeal, this ruling denies us the ability to evaluate the effect of the trial
court’s error. See Colonial Pipeline Co., 968 S.W.2d at 941 (discussing bases for
concluding that mandamus relief was justified by the trial court’s abuse of discretion). 
We hold the trial court abused its discretion in denying those discovery requests to
which we indicated Wheeler is entitled.



          We sustain issues one, two, three, five, and six.
C.      Issue seven 
          Issue seven, in Wheeler’s brief, states that the trial court erred in failing to
determine that a material fact issue exists as to whether Methodist met the
requirement to assert immunity for having made the Report. Wheeler’s argument in
his brief consists of several pages of quotes from “Methodist’s bylaws” followed by
one sentence stating that a fact question exists concerning Methodist’s compliance
with its own bylaws and procedures. Although Wheeler presents more of an
argument regarding this issue and cites one case in his reply brief, his brief does not
explain how, if at all, these actions affect Methodist’s claim of immunity under
TMPA. Because Wheeler’s brief does little more than summarily state his point of
error, without citations to legal authority or substantive analysis, it is not sufficient
to acquaint the Court with the issue and does not present an argument that would
allow the court to decide the issue. Thus, issue seven, which was first sufficiently
briefed only in Wheeler’s motion for rehearing, is waived. Tex. R. App. P. 38.1(h); 
See Keever v. Finlan, 988 S.W.2d 300, 314 (Tex. App.—Dallas 1999, writ
dismissed). 
          Even if it was not waived, Wheeler’s argument regarding issue seven would
fail. Wheeler argues in his motion for rehearing that (1) unless Methodist complied
with its bylaws in placing Wheeler under investigation or in summarily suspending
him, Methodist had no duty to report and (2) the evidence is undisputed that
Methodist failed to comply with its bylaws in conducting its investigation. Therefore,
he concludes that Methodist is not entitled to immunity for issuing the report because
it had no duty to report.
          In relevant part, Section 5.06(b) of the TMPA, requires a peer review
committee or health-care entity to report to the Data Bank in writing “the results and
circumstances of any professional review action” when
          (1)     the action adversely affects the clinical privileges of a physician for a
period longer than 30 days; 
 
          (2)     a health care entity accepts the surrender of clinical privileges of a
physician while the physician is under an investigation by the medical
peer review committee relating to possible incompetence or improper
professional conduct; or
 
          (3)     a health care entity accepts the surrender of clinical privileges of a
physician in return for not conducting such an investigation.

          Following his telephone conversation on March 17, 1995 with Drs. Zepeda and
Simon, Dr. Wheeler knew his conduct in discharging his patient was to be the basis
of an investigation regarding his PIP compliance. Resigning a few hours after he was
told either he would be suspended when Dr. Simpson returned (as Wheeler testified),
or he was suspended (as Zepeda and Simon testified), prevented the investigation that
had been triggered from proceeding much beyond its initiation. The only reasonable
conclusion is that Wheeler’s resignation caused Methodist to discontinue its
investigation, the grounds requiring a Data Bank report under TMPA Section 5.06(b). 
The terms of the reporting requirements require reporting resignations that are
tendered at the moment of inception of an investigation. 
          Wheeler cites Simpkins v. Shalala, 999 F. Supp.106 (D.D.C. 1998), a District
of Columbia district court decision, as authority that a health care entity’s failure to
comply with its bylaws in conducting a peer review investigation disqualifies the
investigation as a matter of law and negates immunity provisions. Upon review of
the case, we find that the court in Simpkins disqualified the investigation and negated
the immunity provisions because the investigation was carried out by an individual
who was not acting on behalf of the hospital. Id. at 114. The court merely used the
hospital’s bylaws as an “indicator” of whether the investigation was carried out on
behalf of the hospital. Id. Thus, in Simpkins, it was the hospital’s failure to conduct
an investigation, and not the hospital’s failure to comply with its bylaws, that negated
the immunity provision. 
          Even if Methodist did not follow the bylaws, it did not waive its immunity. 
Here, the bylaws Wheeler refers to as “Methodist’s bylaws” are actually the “Bylaws
of the Medical Staff of The Methodist Hospital.” Procedural rights created by
medical staff bylaws are not necessarily binding on the hospital. See Stephan v.
Baylor Med. Ctr., 20 S.W.3d 880, 887 (Tex. App.—Dallas 2000, no writ). The
medical staff and the hospital are not one and the same. Id. The preamble to
Methodist’s medical staff bylaws states in part that in discharging its duty to ensure
quality medical care, the staff is “subject to the ultimate authority of the Hospital’s
Board of Directors.” The medical staff bylaws do not attempt to define or limit
Methodist’s powers; rather, their purpose states in part that they present a means
whereby the staff may present concerns to the board of directors. Bylaws that
reference the hospital board, but do not define or limit the powers of a hospital acting
through its governing board, do not create obligations for the hospital. Id. Because
Methodist has no duty pursuant to its medical staff bylaws, any failure by Methodist
to comply with the terms of such bylaws does not affect its duty to report under the
TMPA. 
          In summary, even if Methodist did not follow its medical staff’s bylaws in
suspending or investigating Wheeler, Methodist had a duty to report that it took an
adverse action within the meaning of the TMPA. Medical Staff bylaws, which are not
controlling over the hospital, cannot nullify the TMPA’s reporting requirements. We
overrule issue seven. 
D.      Issues eight and nine
          In issue eight, Wheeler argues that the statutory and common law privileges on
which Methodist relies are unconstitutional. He does not cite case law or provide
analysis in support of this contention.



          Finally, in issue nine, Wheeler asserts that, to the extent the trial court based
its summary judgment decision on an alternative or additional ground, there is a
material fact issue precluding summary judgment on that issue. Again, he does not
cite case law or provide analysis in support of this contention.
          We hold that Wheeler waived these issues by not supporting them with
argument and authorities. See TEX. R. APP. P. 38.1(h); Trenholm v. Ratcliff, 646
S.W.2d 927, 934 (Tex. 1983).
We overrule issues eight and nine. 
V.
Conclusion

          Because the Data Bank republished Methodist’s Report at least twice within
the year before Wheeler filed suit, his defamation claim against Methodist is not
barred by limitations to the extent that it is based on those republications. Although
the evidence does not show that Wheeler raised an issue of material fact as to whether
Methodist acted with malice, the trial court abused its discretion in denying Wheeler
discovery that might have enabled him to establish Methodist’s malice.
          We reverse the trial court’s summary judgment and remand for further
proceedings consistent with this opinion. Our judgment of December 28, 2000
remains unchanged. 
 
                                                   Lee Duggan, Jr.



                                                   Justice

Panel consists of Justices Hedges, Nuchia, and Duggan.




Publish. Tex. R. App. P. 47.